165 P.3d 173

**TIERRA RANCHOS HOMEOWNERS ASSOCIATION, an Arizona corporation, Plaintiff/Counter–Defendant/ Appellant,**

v.

**Todor KITCHUKOV and Mariana Kitchukov, husband and wife, Defendants/Counter–Claimants/ Appellees.**

No. 1 CA–CV 06–0474.

Court of Appeals of Arizona, Division 1, Department D.

Aug. 9, 2007.

---

* Justice Bales recused himself in this case. Pursuant to Article VI, Section 3, of the Arizona Constitution, the Honorable Joseph W. Howard, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

James E. Brown, P.C. By James E. Brown, Phoenix, Co–Counsel for Plaintiff/Counter–Defendant/Appellant.

Paul G. Ulrich, P.C. By Paul G. Ulrich, Pamela B. Petersen, Phoenix, Co–Counsel for Plaintiff/Counter–Defendant/Appellant.

Udall, Shumway & Lyons, P.L.C. By Roger C. Decker, Bret A. Maidman, Mesa, Attorneys for Defendants/Counter–Claimants/Appellees.

## OPINION

HALL, Judge.

¶ 1 Tierra Ranchos Homeowners Association appeals from the trial court's summary judgment in favor of Todor and Mariana Kitchukov (the Kitchukovs). The trial court concluded that Tierra Ranchos acted unreasonably in refusing to approve the location of a detached garage built by the Kitchukovs. For the following reasons, we reverse and remand for further proceedings.

### FACTS AND PROCEDURAL BACKGROUND

¶ 2 This appeal concerns a Gilbert subdivision known as Tierra Ranchos (the Subdivision). Tierra Ranchos Homeowners Association (Tierra Ranchos) is the homeowners' association for the Subdivision, which consists of eleven lots, each larger than one acre. The Kitchukovs own Lot 6 in the Subdivision.

### A. The Subdivision and the Kitchukovs' Lot

¶ 3 The sole access to the Subdivision is Nielson Street, which runs north-south and forms the eastern boundary of the Subdivision. From Nielson Street, two cul-de-sacs provide access to the lots in the Subdivision. The Subdivision is bordered on the west by a Salt River Project canal. In the middle of the Subdivision is a large "ranchette," which divides the Subdivision into a northern half and a southern half. The ranchette itself is not a part of the Subdivision.

¶ 4 The Kitchukovs' lot is situated in the northwest corner of the southern half of the Subdivision. It is bordered on the west by the canal and on the north by the ranchette. To the south and east of the Kitchukovs' property are other lots within the Subdivision.

## B. The CC & Rs

¶ 5 All lot owners within the Subdivision are subject to a recorded Declaration of Covenants, Conditions and Restrictions (the CC & Rs). Pursuant to the CC & Rs, Tierra Ranchos created an Architectural Committee. Any lot owner intending to perform construction on or otherwise modify the appearance of a lot must obtain the prior written approval of the Architectural Committee. The CC & Rs give the Architectural Committee broad discretion to approve or disapprove proposed modifications:

The Architectural Committee may disapprove plans and specifications for any Construction or Modification if the Architectural Committee determines, in its sole and absolute discretion, that the proposed Construction or Modification violates any provision of this Declaration or the Design Guidelines. In addition, the Architectural Committee may disapprove plans and specifications for any Construction or Modification even though the plans and specifications may be in substantial compliance with this Declaration and the Design Guidelines if the Architectural Committee, in its sole and absolute discretion, determines that the proposed Construction or Modification, or some aspect or portion thereof, is unsatisfactory or aesthetically unacceptable.

The CC & Rs further provide that any approved construction or modification must be performed "in accordance with the plans and specifications approved by the Architectural Committee," and that no changes may be made without the prior written approval of the Architectural Committee.

## C. The Kitchukovs' Proposed Construction

¶ 6 In late 2003, the Kitchukovs submitted plans to the Architectural Committee for the construction of a guest house and detached garage on their property. The plans provided that the garage would be set back 82 feet from the north boundary of the lot and 5 feet from the west boundary of the lot. The plans were approved by the Architectural Committee in writing on December 2, 2003, and the Kitchukovs were advised that any changes or modifications would need to be resubmitted to the Architectural Committee.

¶ 7 Subsequently, the Kitchukovs modified the plans to relocate the guest house and garage closer to the north boundary of their property. Although the new plans allegedly were approved by the Town of Gilbert, the Kitchukovs did not resubmit the plans to the Architectural Committee. Sometime after construction began, the Architectural Committee advised the Kitchukovs they would need to resubmit their plans for approval of the new location of the guest house and garage.

¶ 8 The Kitchukovs submitted their new plans to the Architectural Committee on December 17, 2004. With respect to the garage, the new plans maintained the 5–foot setback from the west boundary of the lot but reflected only a 5– to 15–foot setback from the north property line. By letter dated January 5, 2005, the Architectural Committee advised the Kitchukovs that it had approved the relocation of the guest house but not the garage. The letter explained:

Upon review, the consensus was that the guest house was approved and the detached garage was not approved. The committee felt that we must stay consistent with all the other approved structures in the neighborhood. You are given a lot of lenience on the detached garage structure because you are along the canal and it doesn't affect your neighbors.

¶ 9 The Kitchukovs ceased construction and the parties and their counsel subsequently exchanged various correspondence concerning the Architectural Committee's disapproval of the garage location and the parties' participation in the dispute resolution process set forth in the CC & Rs. Sometime in April 2005, the Kitchukovs resumed construction over Tierra Ranchos' objections. Tierra Ranchos began to assess the Kitchu-

kovs a $500.00 per day fine for the alleged violation.

### D. The Legal Proceedings

¶ 10 On May 16, 2005, Tierra Ranchos filed a complaint against the Kitchukovs seeking injunctive relief and a declaratory judgment. Specifically, Tierra Ranchos sought a declaration that its Architectural Committee properly exercised its authority to disapprove the Kitchukovs' proposed garage construction and that the Kitchukovs improperly constructed the garage without obtaining the requisite approval. The Kitchukovs filed a counterclaim against Tierra Ranchos seeking a declaration that the Architectural Committee's disapproval of their plans for the garage was arbitrary and capricious and that the garage could remain on their property. The Kitchukovs also sought to invalidate the fines imposed by Tierra Ranchos.

¶ 11 The parties stipulated to the entry of a preliminary injunction pursuant to which the Kitchukovs agreed to cease construction and/or use of the garage. Subsequently, the parties filed cross-motions for summary judgment. Tierra Ranchos argued that a 5–foot north setback was "not aesthetically pleasing" in a "luxury [a]ssociation" consisting of lots larger than one acre and that its discretionary decision in that regard was entitled to deference. According to Tierra Ranchos, the Architectural Committee wanted to maintain uniform 25–foot minimum setbacks to preserve the open look and feel of the Subdivision. The Kitchukovs, on the other hand, contended that the location of their garage would not adversely impact any Subdivision property and that it was arbitrary and unreasonable for the Architectural Committee to "approve a five foot setback on the west side of the Kitchukovs' property but disapprove a five to fifteen foot setback on the north side given that neither the north or west sides abut any subdivision property."

¶ 12 At oral argument, the trial judge characterized the issue before the court as whether the decision of the Architectural Committee was "reasonable" or "arbitrary." Although the trial judge initially believed he "wouldn't need any factual decision making," he concluded after further consideration that "a site visit [would be] critical to the determination of whether [the Architectural Committee's decision was] reasonable or arbitrary." Accordingly, over Tierra Ranchos' objection, the trial judge appointed a Special Master to visit the Subdivision and report back to the court on a number of issues related to the location of the garage and its impact on neighboring properties.

¶ 13 The Special Master filed his report with the trial court on January 27, 2006. The Special Master Report included various factual observations and findings related to the appearance of the Kitchukovs' garage and its visibility and impact on the overall "openness" of the Subdivision. Tierra Ranchos filed numerous objections to the Special Master Report. The Kitchukovs urged the trial court to rely on the Special Master Report in deciding the cross-motions for summary judgment.

¶ 14 The trial court reconvened oral argument on the parties' cross-motions for summary judgment on March 27, 2006. After taking the matter under advisement, the trial court granted summary judgment in favor of the Kitchukovs and against Tierra Ranchos, finding, in relevant part:

> The [Kitchukovs'] property has a unique location within the subdivision as it is bordered on the west by a Salt River Project Canal and on the north by a ranchette, not part of the Homeowners' Association. Given the property's location within the subdivision, the specific location of the garage minimizes its impact on the other members of the Homeowners' Association. Moving the garage to offset it further from the north boundary of the property would make it more visible to other members of the Homeowners' Association. Given the specific facts of the case, the court finds the decision of the Architectural Control Committee to deny approval of the garage location to be arbitrary, unreasonable, and capricious.

The trial court declared that the Architectural Committee improperly disapproved the construction of the garage in an arbitrary, unreasonable, and capricious manner, that the garage could properly remain on the Kitchukovs' property, and that the fines as-

sessed against the Kitchukovs were invalid. A signed judgment was entered on May 23, 2006, and Tierra Ranchos timely filed a notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) section 12–2101(B) (2003).

## DISCUSSION

¶ 15 Summary judgment shall be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a motion for summary judgment, we determine de novo whether any genuine issues of material fact exist and whether the trial court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000). We view the facts and any inferences drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

### A. The Appropriate Standard for Judicial Deference

■ ¶ 16 As a preliminary matter, Tierra Ranchos argues that the trial court should have deferred to the Architectural Committee's decision to disapprove the Kitchukovs' proposed garage location. Specifically, Tierra Ranchos urges us to adopt the deferential standard of review articulated by the California Supreme Court in *Lamden v. La Jolla Shores Clubdominium Homeowners Ass'n*, 21 Cal.4th 249, 87 Cal.Rptr.2d 237, 980 P.2d 940 (1999).[1] The Kitchukovs, on the other hand, contend that judicial deference is inappropriate in view of our decision in *Johnson v. Pointe Community Ass'n, Inc.*, 205 Ariz. 485, 73 P.3d 616 (App.2003).

¶ 17 In *Johnson*, we held that a community association's interpretation of its own restrictive covenants in a dispute with a homeowner is not entitled to judicial deference. *Id.* at 490, ¶ 22, 73 P.3d at 621. The recorded declaration at issue in that case provided that no changes or alterations that affected the exterior appearance of any residence could be initiated without prior approval of the association's architectural committee. *Id.* at 486, ¶ 4, 73 P.3d at 617. The Johnsons complained to the association that their neighbors had, among other things, altered the texture of the stucco on their backyard patio columns without seeking prior approval from the architectural committee. *Id.* at 486–87, ¶ 4, 73 P.3d at 617–18. Notwithstanding the terms of the declaration, the association declined to require formal architectural committee approval of the new stucco texture. *Id.*

¶ 18 The Johnsons filed a lawsuit seeking enforcement of the terms of the declaration. *Id.* at 487–88, ¶ 12, 73 P.3d at 618–19. Although the association acknowledged it was obligated to enforce the declaration, it nonetheless argued that its decision not to require prior authorization of the stucco change was entitled to judicial deference. *Id.* at 488, ¶ 14, 73 P.3d at 619. We rejected this argument, reasoning that restrictive covenants in a recorded declaration create a contract between a subdivision's property owners as a whole and individual lot owners and that interpretation of such contracts is a question of law for the court. *Id.* at 489–90, ¶¶ 22–23, 73 P.3d at 620–21. We further explained that as to the interpretation of the CC & Rs:

> [B]oth homeowners and their associations are entitled to bring their case before the courts without either party's position receiving deference. The civil courts afford a neutral interpretation of the development's declaration and significant protection against overreaching by either homeowners or their association.

*Id.* at 490, ¶ 25, 73 P.3d at 621 (internal quotation marks and citation omitted).

¶ 19 Notwithstanding our determination that deference is inappropriate in a case involving the *interpretation* of restrictive covenants, we left open the possibility that a different analysis might apply in a case involving a challenge to an architectural committee's discretionary decision concerning exterior appearance modifications. *Id.* at 491,

---

1. Tierra Ranchos does not contend that, and we therefore do not consider whether, the authority given to the Architectural Committee by the CC & Rs to act in its "sole discretion" contractually imposes a deferential standard of review.

¶ 32, 73 P.3d at 622. Specifically, we suggested "[w]e might agree that discretion, worthy of at least some judicial deference, is vested in the [architectural committee] to either approve or disapprove alterations to a residence's exterior appearance[.]" *Id.*

¶ 20 Tierra Ranchos relies upon this language in *Johnson* to support its contention that Arizona should adopt the deferential standard of review set forth in *Lamden.* In *Lamden,* a condominium unit owner sued her community association, alleging that its discretionary decision to spot-treat for termites rather than fumigate diminished the value of her unit. *Id.* at 942. The trial court deferred to the association's decision under a "business judgment" standard of review. *Id.* at 944. The court of appeals reversed the judgment of the trial court because, in its view, an "objective standard of reasonableness" was the appropriate standard by which to assess the association's actions. *Id.* On review, the California Supreme Court adopted the following approach:

> We hold that, where a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise.

*Id.* at 950. Because the association had considered its options in good faith, including obtaining a bid for fumigation, the court determined that deference was appropriate and

affirmed the trial court's judgment in favor of the association. *Id.*

¶ 21 The Kitchukovs argue that *Lamden's* holding applies only to discretionary decisions involving common area maintenance and repair issues. Although *Lamden* may, in fact, be more limited than Tierra Ranchos suggests, we note that courts in other jurisdictions have adopted similarly deferential rules—analogous to the "business judgment" rule applied in the context of corporate decision-making—outside the context of ordinary maintenance decisions. *See, e.g., Levandusky v. One Fifth Ave. Apartment Corp.,* 75 N.Y.2d 530, 554 N.Y.S.2d 807, 553 N.E.2d 1317, 1320–21 (1990) (noting that when "[a]uthority to approve or disapprove structural alterations ... is ... given to the governing board," the appropriate standard by which to review its decisions is "analogous to the business judgment rule applied by courts to determine challenges to decisions made by corporate directors").[2]

¶ 22 The business judgment approach is not the only approach taken by courts. A number of courts have adopted a more objective "reasonableness" standard by which to judge the discretionary actions of community associations. *See, e.g., Beachwood Villas Condo. v. Poor,* 448 So.2d 1143, 1144 (Fla. Dist.Ct.App.1984) ("When a court is called upon to assess the validity of a rule enacted by a board of directors, it first determines whether the board acted within its scope of authority and, second, whether the rule reflects reasoned or arbitrary and capricious decision making."); *cf. Johnson v. Hobson,* 505 A.2d 1313, 1317 (D.C.1986) (noting that "courts have adopted a 'reasonableness' standard of review" for the "regulatory actions of condominium governing bodies") (citations omitted).[3]

---

**2.** Under this approach, judicial review of an association's actions generally is not available "[s]o long as the board acts for the purposes of the [community], within the scope of its authority and in good faith[.]" *Levandusky,* 554 N.Y.S.2d 807, 553 N.E.2d at 1322; *see also Black v. Fox Hills North Cmty. Ass'n, Inc.,* 90 Md.App. 75, 599 A.2d 1228, 1231–32 (1992) (finding that business judgment rule precluded review of community association's decision concerning construction of fence where "the decision fell within the legitimate range of the association's discretion" and "[t]here was no allegation ... of any fraud or bad faith"); *Rywalt v. Writer Corp.,* 34 Colo.App.

334, 526 P.2d 316, 317 (1974) (deferring to business judgment of homeowners association concerning construction of tennis court when there was "no evidence that the directors acted in bad faith or in fraud of the rights of the members").

**3.** At least one commentator has suggested that the "reasonableness rule" represents the majority view. *See* Stacey Rogers Griffin, Annotation, *Validity and Construction of Restrictive Covenant Requiring Lot Owner to Obtain Approval of Plans for Construction or Renovation,* 115 A.L.R. 5th 251 (2004) ("The majority view with respect to covenants requiring submission of plans and pri-

¶ 23 Arizona courts have not expressly determined what deference, if any, should be given to a community association's discretionary decisions concerning modifications or improvements to property.[4] We declined to address that issue in *Johnson* because the issue was not before us in that case. 205 Ariz. at 489 n. 7, 73 P.3d at 620 n. 7. We find that the issue is properly presented in this case because our determination of the appropriate standard will inform our review of the trial court's summary judgment. If the business judgment rule applies, we need only determine whether there is a genuine issue of material fact as to whether Tierra Ranchos acted within the scope of its authority and in good faith. If a reasonableness standard is appropriate, on the other hand, we must determine whether there is a genuine issue of material fact as to the reasonableness of the Architectural Committee's decision concerning the Kitchukovs' garage.

¶ 24 In determining the appropriate standard to apply, we begin with the proposition that Arizona courts look to the Restatement for guidance in the absence of controlling authority. *See Burns v. Davis*, 196 Ariz. 155, 159, ¶ 5, 993 P.2d 1119, 1123 (App.1999) (explaining that Arizona courts "look to the Restatement for guidance" in the absence of case law to the contrary); *City of Phoenix v. Bellamy*, 153 Ariz. 363, 366, 736 P.2d 1175, 1178 (App.1987) (noting that "Arizona courts will follow a restatement of the law in the absence of contrary authority").

¶ 25 The Restatement (Third) of Property: Servitudes § 6.13 (2000) (Restatement) specifically addresses the duties of a common-interest community association to its members. Among other duties, the Restatement imposes upon the association the duty to "treat members fairly" and the duty to "act reasonably in the exercise of its discretionary powers including rulemaking, enforcement, and design-control powers[.]" *Id.* at § 6.13(1)(b), (c). Under the Restatement approach, a member challenging an action of the association bears the burden of proving that the association breached its duty. *Id.* at § 6.13(2). In addition, when the action is one within the association's discretion, the member bears "the additional burden of proving that the breach has caused, or threatens to cause, injury to the member individually or to the interests of the common-interest community." *Id.*

¶ 26 The Restatement approach blends elements of the reasonableness rule and the business judgment rule. The purpose of imposing these burdens on the member is to protect "the collective decisionmaking processes of common-interest communities from second-guessing by the judiciary and to protect the community from the expenses of too-ready resort to litigation by disgruntled community members, while at the same time protecting individual members from improper management and imposition by those in control of the association." *Id.* at cmt. a. As the comments indicate, "[t]he business-judgment rule [was] not adopted because the fit between community associations and other types of corporations is not very close, and it provides too little protection against careless or risky management of community property and financial affairs." *Id.* at cmt. b. Nonetheless, unlike jurisdictions requiring the association to prove the reasonableness of its actions, the Restatement approach requires the member challenging the association to

---

or consent to construction ... is that such clauses, even if vesting the approving authority with broad discretionary powers, are valid and enforceable so long as the authority to consent is exercised reasonably and in good faith.").

4. Some of our cases do suggest, however, that reasonableness is an important consideration. *See, e.g., Ahwatukee Custom Estates Mgmt. Ass'n, Inc. v. Turner*, 196 Ariz. 631, 635, ¶ 10, 2 P.3d 1276, 1280 (App.2000) (indicating that a mandatory injunction would be inappropriate to "enforce a requirement of formal approval [of exterior modifications] when approval has been arbitrarily and unreasonably withheld"); *Villas*

at *Hidden Lakes Condo. Ass'n v. Geupel Constr. Co., Inc.*, 174 Ariz. 72, 80, 847 P.2d 117, 125 (App.1992) ("Courts have regularly imposed a reasonableness standard on rules and regulations adopted by condominium homeowners' associations.") (collecting cases). In its supplemental briefing, Tierra Ranchos cites several Arizona cases applying the business judgment rule, but those cases do not involve community associations. *See United Dairymen of Ariz. v. Schugg*, 212 Ariz. 133, 128 P.3d 756 (App.2006); *Albers v. Edelson Tech. Partners, L.P.*, 201 Ariz. 47, 31 P.3d 821 (App.2001).

establish that its actions were unreasonable. *Id.* The Restatement approach essentially "provide[s] the advantages of the business-judgment rule, but at less potential cost to the interests of individual members." *Id.*

¶ 27 We find the Restatement approach to be well-reasoned and see no reason to adopt a different standard by which to review the discretionary decisions of a community association. *See* Scott B. Carpenter, Community Association Law in Arizona 157 (2d ed.2005) (suggesting that Arizona courts should follow the Restatement (Third) of Property: Servitudes absent contrary authority in "cases that deal with community associations and restrictive covenants").[5]

## B. The Trial Court's Summary Judgment

■ ¶ 28 Within this framework, we must determine whether the trial court properly granted summary judgment in favor of the Kitchukovs. Specifically, we must determine whether, as a matter of law, Tierra Ranchos breached its duty to act reasonably in the exercise of its discretionary design-control powers. We note initially that issues of reasonableness are usually questions of fact. *See, e.g., In re Estate of Jung,* 210 Ariz. 202, 207, ¶ 28, 109 P.3d 97, 102 (App.2005) ("[I]ssues of reasonableness are generally questions of fact."); *Trustmark Ins. Co. v. Bank One, Arizona, NA,* 202 Ariz. 535, 541, ¶ 25, 48 P.3d 485, 491 (App.2002) (noting that "determinations of reasonableness are usually questions of fact").

¶ 29 During oral argument on the parties' cross-motions for summary judgment, the trial judge acknowledged that "there's a dispute on both sides ... whether the homeowners' association acted arbitrarily or capriciously." According to the trial judge, "[t]he issue really is ... what the facts are and what reasonable people can see," and "it's ... going to be a fact question as to whether or not the homeowners' association acted reasonably or not." Nonetheless, the trial court determined that the Architectural Committee's decision concerning the Kitchu-

kovs' garage was arbitrary, unreasonable, and capricious because (1) the location of the Kitchukovs' property is unique, (2) the specific location of the garage minimizes its impact on other association members, and (3) moving the garage to comply with a 25–foot setback requirement would make it more visible to other association members. We address each of these conclusions in turn.

### 1. The Uniqueness of the Kitchukovs' Property

¶ 30 First, whether the Kitchukovs' property is sufficiently unique so as to warrant an exception from the Architectural Committee's alleged setback policy is a disputed factual question. *Cf. Krueger v. Bd. of County Comm'rs,* 31 Kan.App.2d 698, 71 P.3d 1167, 1172 (2003) (noting that whether property is "unique" for valuation purposes is a question of fact), *aff'd,* 277 Kan. 486, 85 P.3d 686 (2004). The Kitchukovs contend that no other property in the southern half of the Subdivision is similarly situated next to both the canal and the ranchette. Tierra Ranchos, on the other hand, points out that another lot in the northern half of the Subdivision is situated next to both the canal and the ranchette and that a total of five lots in the Subdivision abut the ranchette on at least one side. We believe that reasonable minds could differ as to the "uniqueness" of the Kitchukovs' property.

### 2. The Impact of the Garage on Other Association Members

¶ 31 The visual impact of the Kitchukovs' garage in its present location on other association members is also a disputed issue of fact. Todor Kitchukov submitted an affidavit stating that "[t]he detached garage, as constructed, in its location behind the guest house and our main house is almost invisible to anyone on the common areas of our community unless they are literally driving up our driveway to our home." Tierra Ranchos, on the other hand, submitted affidavits from four members of its Architectural Committee, all of whom stated that "[t]he location of

---

**5.** Indeed, the Arizona Supreme Court recently adopted the approach set forth in the Restatement (Third) of Property: Servitudes § 4.1 (2000) for interpreting restrictive covenants. *See Powell v. Washburn,* 211 Ariz. 553, 557, ¶ 14, 125 P.3d 373, 377 (2006).

the detached garage constructed by the Kitchukovs in contravention of the disapproval of the Committee is not hidden from the view of other persons located in the subdivision."

¶ 32 Tierra Ranchos also presented evidence that, separate and apart from the specific location of the Kitchukovs' garage, the 25–foot setback requirement imposed by its Architectural Committee is necessary to preserve the open look and feel of the Subdivision. The President of Tierra Ranchos stated in his affidavit:

We advised the Kitchukovs that the primary reason for disapproving only a five foot setback from the north wall was to maintain a suitable distance from the property lines of adjoining owners [6] and that the Committee had determined that twenty-five foot setbacks were more appropriate.... An accommodation was made for a five foot setback along the west property line because the west property line of the Kitchukovs adjoins the canal. We told the Kitchukovs that the Committee determined that a more substantial setback was required along the north side for a variety of reasons, including that construction of improvements with only 5 foot setbacks for 1 acre lots was not aesthetically appropriate for the entire subdivision.

¶ 33 Members of the Architectural Committee also submitted affidavits stating their decision was motivated, at least in part, by a desire to avoid "creat[ing] a precedent for less than 25′ setbacks throughout the subdivision." In that regard, Tierra Ranchos presented evidence that its Architectural Committee previously had rejected an application by another lot owner, Mark Rolls, who desired to construct a guest house and single-

car garage with 5–foot setbacks from the north and east boundaries of his property.[7] According to Tierra Ranchos, no other property in the Subdivision contains a structure with a 5–foot setback.

¶ 34 While the Kitchukovs dispute that the Architectural Committee's decision was based on legitimate concerns about the specific location of their garage and/or its impact on the overall "feel" of the Subdivision, we must construe the facts in the light most favorable to Tierra Ranchos for purposes of the Kitchukovs' motion for summary judgment. *Prince*, 185 Ariz. at 45, 912 P.2d at 49.

### 3. The Likely Visibility of the Garage with a 25–Foot Setback

¶ 35 Finally, whether moving the garage to comply with a 25–foot setback requirement would make it more visible to other association members is disputed, and we cannot find any evidence in the record to support the trial court's conclusion in this regard. The Special Master Report submitted to the trial court did suggest that moving the garage "may even make it more visible in some respects." However, there is no indication that the trial court adopted the Special Master Report in whole or in part. Indeed, the trial judge stated during oral argument that the Special Master was not appointed in lieu of a trial and that the Special Master Report was "not a recommendation to the Court as to facts that the Court should find in support of one or the other." [8]

¶ 36 Viewing the facts in the light most favorable to Tierra Ranchos, a fact finder could conclude that the Architectural Com-

6. The "adjoining owner" referred to in the letter is the owner of the ranchette, who is not a member of the association.

7. The minutes from the meeting at which Mr. Rolls' application was discussed indicate that "[s]tandard setbacks would require 30′ from the property line to the east along Neilson and 40′ from the property line on the northern fence." Tierra Ranchos contends that the "standard setbacks" referred to in the minutes are those identified in the plat map for the Subdivision. Although the Architectural Committee determined in the Rolls case that "the eastern 30′ setback from Neilson was important to maintain," it

agreed that "the northern setback could be relaxed to 25′ from the northern property line." Tierra Ranchos maintains that its decision in that regard established an informal precedent for 25–foot setbacks in the Subdivision.

8. We note that a court may only appoint a special master when: (1) it is provided for by statute; (2) the parties consent; (3) pretrial and post-trial matters cannot be addressed effectively and timely by the trial court; or (4) there are issues to be decided by the court without a jury. Ariz. R. Civ. P. 53(a).

mittee's decision concerning the Kitchukovs' garage was reasonable.[9] Accordingly, summary judgment was inappropriate. *See Schenks v. Earnhardt Ford Sales Co.*, 9 Ariz. App. 555, 557, 454 P.2d 873, 875 (1969) ("It is for the trier of fact, be that jury or judge, to resolve ... disputed fact question[s] ... and it was reversible error for the trial court to grant the motion for summary judgment.").

### 4. Attorneys' Fees

¶ 37 Because we are reversing the trial court, we must also vacate its award of attorneys' fees to the Kitchukovs.[10] The trial court may award fees once the merits of the case have been resolved. We also deny Tierra Ranchos' request for attorneys' fees on appeal, deferring this request to the trial court's discretion pending resolution of the matter on the merits.

### CONCLUSION

¶ 38 For the foregoing reasons, the trial court's summary judgment and award of attorneys' fees in favor of the Kitchukovs is reversed, and this case is remanded for further proceedings consistent with this decision.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and LAWRENCE F. WINTHROP, Judge.

---

9. Because a fact finder could also reach the opposite conclusion, we decline Tierra Ranchos' invitation to direct the trial court to enter summary judgment in its favor.

10. The Kitchukovs acknowledge that the award of attorneys' fees below was contingent on judgment in their favor.