NOTICE: NOT FOR PUBLICATION.
UNDER ARIZ. R. SUP. CT. 111(c), THIS DECISION DOES NOT CREATE LEGAL PRECEDENT
AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

PAUL B. MOHR, JR. and LYDIA BUSTAMANTE-MOHR, husband and wife, *Plaintiffs/Appellants*,

*v.*

MURPHY ELEMENTARY SCHOOL DISTRICT 21 OF MARICOPA COUNTY; WILLIAM E. GRIMES and THERESA M. GRIMES, in their capacities as Governing Board Members; and TERI SWANSON, in her capacity as Governing Board Member, *Defendants/Appellees*.

Nos. 1 CA-CV 13-0088, 1 CA-CV 13-0142
(Consolidated)
FILED 10-14-2014

Appeal from the Superior Court in Maricopa County
No.  LC2010-000273
The Honorable Gary E. Donahoe, Judge *Retired*
The Honorable Michael J. Herrod, Judge

No.  CV2009-035970
The Honorable Edward O. Burke, Judge *Retired*
The Honorable Arthur T. Anderson, Judge

**APPEAL DISMISSED IN PART; AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Law Office of Gary Lassen P.L.C., Mesa
By Gary L. Lassen
*Counsel for Plaintiffs/Appellants*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By Georgia A. Staton, Gordon Lewis, Eileen Dennis Gilbride
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Margaret H. Downie joined.

**BROWN,** Judge:

¶1      In these consolidated appeals, Paul B. Mohr, Jr. ("Mohr") challenges his termination of employment as the superintendent of the Murphy Elementary School District ("District").[1] In CA-CV 13-0088 ("Administrative Case"), Mohr argues the District's governing board ("Board") employed improper procedures to dismiss him. In CA-CV 13-0142 ("Civil Case"), a civil action Mohr filed when the Board initiated the administrative termination process, Mohr contends the superior court erred in (1) finding unenforceable an "agreement" between Mohr and the Board to accept suspension as a sanction, and (2) concluding the Board did not violate Arizona's open meeting law. For the following reasons, we lack jurisdiction to consider Mohr's arguments in the Administrative Case and we therefore dismiss the appeal. Relating to the Civil Case, we affirm the court's ruling that the purported agreement between Mohr and the Board was unenforceable. We vacate in part, however, the court's open meeting law ruling and remand for further proceedings.

---

[1] Paul's wife, Lydia Bustamante-Mohr, is also a plaintiff in these proceedings. For ease of reference, and because Lydia does not raise any separate issues, our decision refers only to Paul.

**BACKGROUND**

**¶2**          In December 2007, Tempe police arrested Mohr at a grocery store after he admitted to intentionally stealing a $125.00 bottle of wine. Mohr was charged with shoplifting, a misdemeanor offense. He did not disclose the shoplifting incident to the Board until several weeks later, when he telephoned Board member William Grimes and explained he made an "honest mistake" when he exited the grocery store accidentally without paying for a "$25.00" bottle of wine. Grimes accepted Mohr's description of the event and decided not to investigate the matter. Mohr did not inform Grimes that he was arrested and charged with a criminal offense.

**¶3**          During this same time period, the Arizona Department of Education notified Mohr's staff that the Arizona Department of Public Safety had suspended Mohr's fingerprint clearance card.[2] Over the course of the following twenty months, Mohr responded to his staff's repeated requests to resolve the fingerprint card suspension by explaining he "would take care of it" or he was "working on it." He also assured his staff that the Board was aware of the issue.[3] When the District's human resources staffing associate questioned Mohr regarding the suspension, he informed her that the suspension was the result of a "misunderstanding" in which he had unintentionally failed to pay for a "$20" bottle of wine.

_____

[2]      *See* Ariz. Rev. Stat. ("A.R.S.") §§ 41-1758(2), -1758.03(C)(15), -1758.04(C) (person arrested for shoplifting shall have fingerprint clearance card suspended by Department of Public Safety). Arizona law, District policy, and Mohr's employment contract required Mohr, as superintendent, to maintain a fingerprint clearance card at all times during his employment with the District. *See, e.g.*, Arizona Administrative Code R7-2-616(B)(3)(h).

[3]      In late January 2008, Mohr prepared a memo advising the Board he had been arrested, but he misrepresented the circumstances of the shoplifting incident by asserting it was an "honest mistake" and a "misunderstanding." Mohr instructed his staff to add the memo to his personnel file, stating he would personally give the Board a copy. The Board never received the memo, however, and only learned of its existence after commencing an investigation into Mohr's purported misconduct as grounds for termination. In the memo, Mohr disclosed that his fingerprint clearance card had been suspended, but asserted it would be reinstated upon his completion of "community service." The card, however, was not "automatically reinstated;" it remained suspended until September 1, 2009.

¶4 Meanwhile, in April 2008 Mohr's criminal case was dismissed after he completed a diversion program. Mohr renewed his contract with the District in December 2008, and again in June 2009, thereby extending his employment contract to June 30, 2012. The contract provided that Mohr would act as the "chief executive officer of the Board" and administer the schools under the supervision and direction of the Board. At that time, Mohr successfully applied for a fingerprint clearance card, which was issued on September 1, 2009.

¶5 On September 10, 2009, a local television station broadcast a news story about Mohr's arrest and, apparently based on the suspended fingerprint card, his lack of a proper teaching certificate. That night, Grimes called Mohr regarding the story and Mohr admitted the news account was accurate. Having become aware of additional circumstances surrounding the shoplifting incident, the Board held an executive session two days later at which Mohr appeared. Mohr admitted he had not been truthful with the Board regarding the shoplifting incident and "accepted full responsibility[.]"

¶6 During its regularly scheduled meeting on September 14, the Board placed Mohr on paid administrative leave for thirty days pending an investigation into his alleged misconduct. As part of the investigation, the Board learned the previously undisclosed details of the shoplifting incident, Mohr's subsequent arrest and the fingerprint card suspension.[4] On September 28, the Board met in executive session and, after consulting with Mohr telephonically, suspended Mohr for thirty days without pay, effective immediately.[5]

¶7 At 5:30 p.m. on October 8, the Board held an executive session focusing, primarily, on Mohr's employment and discipline. As reflected in the record, Mohr received timely notice of the meeting and was informed he could request that the discussion regarding his employment be held in an open meeting. The conclusion of the executive session agenda stated: "The Board may reconvene in public session to take legal action on [matters

---

[4] The police report, which Mohr admitted to the Board accurately reflected the circumstances of the shoplifting, details that Mohr picked up a box of fire logs, removed one of them, replaced the missing log with the $125 bottle of wine, and proceeded to check out, paying only for the logs.

[5] We refer to the parties' discussions and the Board's disciplinary action taken on September 28, 2009 as the "unpaid suspension."

relating to Mohr] discussed in Executive Session." At 6:30 that evening, the Board held a regular meeting. Nothing in the agenda indicated that the Board would be discussing Mohr's employment. As reflected in the minutes, Grimes moved to add "Emergency Item E.1.1 regarding Dr. Paul Mohr, Superintendent." The motion carried unanimously. Later during the meeting, Grimes moved that the board "instruct their legal counsel to proceed with the direction discussed in Executive Session as to Dr. Mohr's employment a[n]d to report back to the board on the status and with the recommendation." The motion passed by a vote of four to one.

¶8        At an October 28 special meeting, the Board recessed for an executive session to discuss Mohr's employment. When the special meeting resumed, Grimes moved to rescind Mohr's unpaid suspension and reinstitute paid suspension. The motion passed and the Board reimbursed Mohr for the salary he had not received during the unpaid suspension. On November 10, the Board adopted a "statement of charges" in support of terminating Mohr's employment, alleging Mohr's misrepresentations relating to the shoplifting incident and his suspended fingerprint card amounted to a breach of his employment contract. The statement of charges also found good cause for termination of Mohr's employment because his behavior violated various District policies, as well as state regulations. Mohr requested a hearing to challenge the statement of charges.

¶9        In the meantime, the day before the Board adopted the statement of charges, Mohr initiated the Civil Case by filing suit against the District and the Board in superior court. In Count 1, Mohr sought a declaratory judgment that the Board breached his employment contract. Referring to the Board's decision to seek Mohr's termination after imposing the unpaid suspension, in Count 2 Mohr sought injunctive relief requiring the Board to "honor" the unpaid suspension and enjoining it from taking "any further adverse action." Mohr alleged the Board's actions "contravene[d] the principles of law of accord and satisfaction" and violated his due process rights under the Arizona Constitution.[6]

¶10       The superior court denied Mohr's request for a preliminary injunction, finding Mohr had not exhausted his administrative remedies and the concept of accord and satisfaction was not applicable because the Board expunged Mohr's suspension and paid him for the period of time he

[6]        Mohr initially sought a temporary restraining order but later withdrew that request.

spent on unpaid leave.[7] Mohr sought special action relief in this court, and we declined jurisdiction. The District filed a motion to dismiss, and Mohr filed an amended complaint in 2010 ("First Amended Complaint") against the District and three individual Board members, raising the following claims:

- Count 1, open meeting law violation (Board's hiring of Lewis and Roca as counsel, against individual Board members);

- Count 2, declaratory judgment—employment contract and settlement agreement (against the Board);

- Count 3, declaratory judgment—constitutional and statutory rights (alleging that Board's intended actions would violate due process);

- Count 4, claim under 42 U.S.C. § 1983 (the Board wrongfully deprived Mohr of his property interest in his employment contract and deprived him of his liberty interest to pursue a livelihood; against all defendants); and

- Count 5, tortious interference with contract (individual Board members' acts outside the open meeting law process interfered with Mohr's employment contract).

Before the superior court ruled on pending motions, the District removed the case to federal court.

¶11 The federal district court dismissed all of Mohr's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) except for a contract claim in Count 2 seeking a declaratory judgment as to a purported stipulation between the parties to stay the administrative proceedings pending the outcome of the Civil Case.[8] On remand, after reviewing the

---

[7] Mohr also received his normal salary and benefits from the time the Board rescinded his 30-day unpaid leave until his termination from employment on March 8, 2010.

[8] Mohr appealed to the Ninth Circuit Court of Appeals, which affirmed the ruling of the District Court.

transcripts from the hearing at which the stipulation purportedly took place, the superior court entered a minute entry ruling on November 2, 2010 finding "there was no stipulation to stay the hearing and the termination hearing properly proceeded on February 18, 2010."

¶12 Despite Mohr's attempts in the Civil Case to enjoin the administrative proceedings, a hearing on the District's statement of charges was held in February 2010. Neither Mohr nor his counsel appeared at the hearing. The hearing officer noted Mohr had notice that a failure to appear would result in the hearing proceeding without him and that the District would be permitted to introduce evidence and present its case. The hearing proceeded accordingly and the hearing officer later issued his decision recommending that the Board dismiss Mohr. On March 8, 2010, the Board accepted the decision and terminated  Mohr's employment, effective immediately.

¶13 Mohr then initiated the Administrative Case by filing a special action in superior court ("Judicial Review Complaint"). Count 1 challenged the Board's decision pursuant to A.R.S. §§ 12-901 to -914. The other six counts included the following allegations:

- Count 2, open meeting law violations (improper hiring of Lewis & Roca as counsel);

- Count 3, breach of employment contract and Settlement Agreement;

- Count 4, constitutional and statutory violations (biased Board failed to afford due process and improperly used termination procedures in A.R.S. §§ 15-539 to -552);

- Count 5, tortious interference with contract and intentional infliction of emotional distress;

- Count 6, special action relief (Board "acted in excess of statutory authority"); and

- Count 7, violation of Arizona procurement law (hiring of Lewis & Roca).

The District moved to dismiss Counts 2 through 7. The District argued, based on the federal court's rulings, that res judicata barred Counts 2 and 5, and with respect to Counts 3, 4 and 6, that those claims were "subsumed

within the determination of the administrative appeal [Count 1], and cannot be brought as a separate action or count." The District also requested Count 5 be dismissed for failure to state a claim, and Count 7 dismissed based on lack of standing. The superior court granted the District's motion, leaving only Count 1 for resolution.

¶14 After considering the administrative record, the superior court found that substantial evidence supported the hearing officer's decision and the Board's decision to terminate Mohr's employment was not arbitrary, capricious or an abuse of discretion. The court affirmed the Board's decision but denied its request for attorneys' fees and entered a signed judgment on February 4, 2011. Mohr filed an untimely motion for new trial on February 24, 2011, which was denied by an unsigned minute entry on March 22, 2011. Mohr moved to set aside the judgment pursuant to Arizona Rule of Civil Procedure ("Rule") 60(c)(4) and (6). The superior court denied the Rule 60(c) motion and Mohr filed a notice of appeal.

¶15 In April 2011, (after the superior court in the administrative appeal dismissed six of the seven counts raised in Mohr's Judicial Review Complaint), Mohr proceeded to file in the Civil Case another amended complaint ("Second Amended Complaint"), which, subject to a partially successful motion to strike filed by the District, raised the following claims:

- Count 1, declaratory judgment (employment contract and Settlement Agreement);

- Count 2, breach of contract (Settlement Agreement);

- Count 3, breach of covenant of good faith and fair dealing (Settlement Agreement);

- Count 4, promissory estoppel and detrimental reliance (Settlement Agreement);

- Count 5, intentional infliction of emotional distress;

- Count 6, libel and slander;

- Count 7, false light;

- Count 8, violation of the open meeting law;

- Count 9, fraudulent inducement (Settlement Agreement)

**¶16** The parties cross-moved for summary judgment, and the superior court granted summary judgment in favor of the District. Mohr unsuccessfully moved for a new trial under Rule 59(a). The court awarded the Board $89,216 for attorneys' fees incurred in the Civil Case pursuant to A.R.S. § 12-341.01 and entered a signed judgment on December 20, 2012, and. Mohr timely appealed.

## JURISDICTION

**¶17** In civil matters, "a right to appeal exists only when that right is specifically given by statute." *Pima County v. State Dep't of Rev.*, 114 Ariz. 275, 277, 560 P.2d 793, 795 (1977). "If no statute provides such a right, an appellate court lacks jurisdiction to consider the issues raised on appeal." *Stant v. City of Maricopa Employee Merit Bd.*, 234 Ariz. 196, 198, ¶ 5, 319 P.3d 1002, 1004 (App. 2014).

**¶18** With respect to the Civil Case, we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1) (providing a right to appeal from a final judgment entered in an action commenced in a superior court). As to the Administrative Appeal, however, Mohr has not cited a statutory basis for this court's appellate review. An appellant "has a duty to identify the jurisdictional basis of an appeal," but we also "have an independent duty to confirm our jurisdiction over an appeal before us." *Anderson v. Valley Union High School*, 229 Ariz. 52, 54, ¶ 2, 270 P.3d 879, 881 (App. 2012).

**¶19** The Judicial Review of Administrative Decisions Act ("JRADA"), A.R.S. §§ 12-901 to -914, provides the superior court, and subsequently this court, with jurisdiction to review the propriety of final decisions made by administrative agencies. A.R.S. §§ 12-911, -913. An "[a]dministrative decision" means "any decision, order or determination of an administrative agency[.]" A.R.S. § 12-901(2). Political subdivisions are specifically excluded from the definition of "administrative agency," A.R.S. § 12-901(1), and Mohr has correctly maintained the District is a political subdivision of the state. *See Anderson*, 229 Ariz. at 57, ¶ 13, 270 P.3d at 884. Therefore, despite Mohr's assertion to the contrary in his Judicial Review Complaint, the superior court did not, nor does this court, have jurisdiction under the JRADA to consider the Administrative Case. *See id.* Another statutory basis must exist to confer jurisdiction on this court.

**¶20** Pursuant to A.R.S. § 15-341(A)(22), a district governing board shall "[p]rescribe and enforce policies and procedures for disciplinary action against an *administrator* who engages in conduct that is a violation of the policies of the governing board," and when such conduct is "cause for

9

dismissal, the provisions of notice, hearing and *appeal* in chapter 5, article 3 [Certification and Employment of Teachers] of this title shall apply." (Emphasis added). Section 15-543 sets forth the procedure for appealing from decisions of the board under chapter 5, article 3, and states: "The decision of the governing board may be reviewed by *the court* in the same manner as the decision made in accordance with § 41-783." (Emphasis added).

¶21 Mohr, however, does not fall within the meaning of "administrator," which is defined as "any school district administrator. . . devoting not less than fifty per cent of his time to classroom teaching." A.R.S. § 15-501(1). "Superintendent" is separately defined as "the superintendent of schools of a school district." A.R.S. § 15-501(9). The use of these terms in other sections of chapter 5 also reflects that the title "superintendent" is not a subset of "administrator," but a separate and distinct designation. *See, e.g.,* A.R.S. § 15-503 (setting forth specific procedures for contracting superintendents and other procedures for contracting administrators). More importantly, as relevant here, pursuant to A.R.S. § 15-539, a superintendent initiates disciplinary proceedings under chapter 5, article 3, by presenting a written statement of charges to the board of the school district, and the statute does not provide an alternative mechanism for initiating disciplinary proceedings against a superintendent who has committed violations warranting dismissal. Therefore, because chapter 5, article 3, governs the termination of *administrators*, as well as the appeal of such a termination to the superior court, it does not apply to superintendents. Because no statute provided Mohr the right to appeal to this court, we lack jurisdiction to consider the appellate arguments arising out of the Administrative Case.[9]

## DISCUSSION

¶22 We review *de novo* the grant of a motion for summary judgment. *Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 199, ¶ 15, 165 P.3d 173, 177 (App. 2007). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). We will affirm a summary judgment if it is correct for any reason. *City of*

---

[9] Even if we considered Mohr an administrator under chapter 5, article 3, this court has held that § 15-543 provides only a limited right to appeal to the superior court, which does not include "a right of appeal to this court." *Anderson*, 229 Ariz. at 59, ¶ 21, 270 P.3d at 886.

*Tempe v. Outdoor Sys., Inc.*, 201 Ariz. 106, 111, ¶ 14, 32 P.3d 31, 36 (App. 2001).

### A.      Jurisdiction of the Board

**¶23**      As a preliminary matter, Mohr contends the superior court erred by "not question[ing] the jurisdiction of the Board to adjudicate its own contract." Specifically, Mohr argues the termination process was unconstitutional because the Board acted as both the "prosecutor" and the "adjudicator." In addition, Mohr asserts the Board was inherently biased due to its pecuniary interest in the outcome of the proceedings. The federal district court squarely addressed and rejected these claims in its final order. Therefore, Mohr was barred from re-litigating these claims under the doctrine of issue preclusion. *See 4501 Northpoint LP v. Maricopa County*, 212 Ariz. 98, 103, ¶ 26, 128 P.3d 215, 220 (2006) (explaining that issue preclusion bars the litigation of issues "that have in fact been litigated and were essential to a prior judgment").

### B.      Denial of Injunctive Relief

**¶24**      Mohr next argues the superior court erred by denying him preliminary injunctive relief based on his failure to exhaust his administrative remedies. He contends that the court, by denying the injunction, improperly failed to consider his claim that the District breached the Settlement Agreement. The record, however, reflects that the court addressed this claim and rejected it based on its determination that lack of consideration precluded enforceability of the Settlement Agreement. In any event, Mohr did not seek timely review of the court's order denying preliminary injunctive relief, and the administrative proceeding that Mohr sought to enjoin has long since occurred. This issue is therefore moot. *See ASH, Inc. v. Mesa Unified Sch. Dist. No. 4*, 138 Ariz. 190, 191, 673 P.2d 934, 935 (App. 1983) (fully executed contract that was sought to be enjoined renders challenge to denial of injunctive relief moot based on changed circumstances); *but see Pointe Resorts, Inc. v. Culbertson*, 158 Ariz. 137, 140-41, 761 P.2d 1041, 1044-45 (1988) (based on "policy considerations," summarily determining that appellees' completion, during pendency of appeal, of actions sought to be enjoined did not moot appeal).

### C.      Accord and Satisfaction

**¶25**      Next, Mohr contends the superior court erred in finding the "Settlement Agreement" unenforceable for lack of consideration. He asserts his thirty-day unpaid suspension constituted an accord and satisfaction.

¶26　　　　As noted *supra*, ¶¶ 20-21, and argued by Mohr, Title 15, Chapter 5, does not govern the discipline or termination of Mohr.  Instead, the Board's authority for disciplining Mohr arose out of the parties' employment contract,  which states in relevant part:

> D.  DISCHARGE FOR CAUSE.  Discharge for Cause shall constitute conduct that is seriously prejudicial to DISTRICT, including but not limited to neglect of duty or breach of contract.  Notice of discharge for cause shall be given in writing and SUPERINTENDENT shall be entitled to appear before the Board to discuss such causes.  Such meeting shall be conducted in closed executive session.  If following the closed executive session the Board decides that SUPERINTENDENT should be discharged for cause, the SUPERINTENDENT shall be so advised in writing.

¶27　　　　The contract required the Board to provide Mohr with written notice of discharge for cause, afford him the opportunity to appear at an executive session to discuss such cause, and advise him of the discharge in writing. Although the contract explicitly references only the authority and procedures for *terminating* Mohr, the contract implicitly authorized the Board to impose lesser sanctions, such as an unpaid suspension. Therefore, the Board had the contractual authority to discipline Mohr for his illegal conduct by imposing the thirty-day unpaid suspension.  It is undisputed that Board members consulted Mohr while contemplating an appropriate sanction, but the Board nonetheless retained its unilateral authority to impose discipline and did not need Mohr's consent before placing him on unpaid suspension.  Finally, contrary to Mohr's argument, the Board had the authority to rescind the unpaid suspension and terminate his employment.[10]  As explained in *Zavala v. Arizona State Personeel Board*, 159 Ariz. 256, 261, 766 P.2d 608, 613 (App. 1987), when a board rescinds an unpaid suspension, reimburses lost pay, and then terminates the employee, the termination is "not a second disciplinary action, but a substitution for the first."  Therefore, the superior court correctly found no accord and

---

[10]　　　In response to the Board's argument that he was reimbursed for all lost wages, Mohr argues in his reply brief that he was not compensated for the "time value of the money withheld." Because any interest on the monies held for less than a month would be de minimis, and because Mohr failed to raise this issue in his opening brief, we decline to address it.  *See Romero v. Southwest Ambulance*, 211 Ariz. 200, 204 n.3,, ¶7, 119 P.3d 467, 471 n.3 (App. 2005) (explaining appellate court need not address issues raised for the first time in a reply brief).

satisfaction prevented the Board from rescinding the unpaid suspension and substituting the termination of Mohr's employment.

### D. Open Meeting Law

¶28 Mohr next challenges the legality of the procedures followed by the District to terminate him. Throughout his briefing, Mohr raises various claims of open meeting law violations, which we distill to five discrete issues: (1) whether Lewis and Roca was improperly hired; (2) whether the Board's discussion and consideration of Mohr's employment as "Emergency Item E.1.1" to the October 8 regularly scheduled meeting violated A.R.S. § 38-431.02; (3) whether the October 8 and October 28 notices, agendas, and minutes provided the statutorily required notice; (4) whether the Board's final decision to terminate Mohr's employment was made during a closed, executive session on October 28; and (5) whether the Board failed to ratify its actions after violating the open meeting laws. Our review is governed by the overarching statutory principle that "[a]ll legal action transacted by any public body during a meeting held in violation of any provision of the [open meeting law] is null and void" unless timely ratified, as directed by statute. A.R.S. § 38-431.05.

¶29 Mohr contends the Board violated the open meeting law when individual members, outside of a regular meeting and without official action of the Board, consulted with the law firm of Lewis & Roca. The federal district court rejected this claim. Thus, the superior court properly found in favor of the District on this claim based on issue preclusion. *See 4501 Northpoint LP,* 212 Ariz. at 103, ¶ 26, 128 P.3d at 220.

¶30 Mohr further argues that the Board violated A.R.S. § 38-431.02 by including discussions and decisions regarding Mohr's employment as an "emergency item" at the Board's October 8 regular meeting, which immediately followed an executive session. On the limited record before us, we conclude that granting summary judgment as to Count 8 was improper.

¶31 Pursuant to A.R.S. § 38-431.02(C), board meetings may not be held "without at least twenty-four hours' notice to the members of the public body and the general public." The requisite notice "shall include an agenda of the matters to be discussed or decided at the meeting" and the "public body may discuss, consider or make decisions only on matters listed on the agenda[.]" A.R.S. § 38-431.02(G), (H). "In case of an actual emergency," however, the statute provides a limited exception and allows a meeting to be "held on such notice as is appropriate to the circumstances."

A.R.S. § 38-431.02(D). If the emergency exception "is utilized" to conduct "an emergency session" or consider "an emergency measure," the "public body must post a public notice within twenty-four hours declaring that an emergency session has been held and setting forth" the agenda outlining all matters that were discussed and decided. A.R.S. § 38-431.02(D).

¶32     As previously noted, on the evening of October 8, the Board first held an executive session focusing, primarily, on Mohr's employment and discipline. The conclusion of the executive session agenda stated: "The Board may reconvene in public session to take legal action on [matters relating to Mohr] discussed in Executive Session."

¶33     At 6:30 that evening, the Board held a regular meeting. Nothing in the meeting agenda indicated that the Board would discuss, consider, or take any action on any matter relating to Mohr. According to the minutes, however, at the outset of the October 8 regular meeting, the Board accepted the noticed agenda and adopted, at the recommendation of Grimes, Emergency Item E.1.1 "regarding Dr. Paul Mohr, Superintendent." The minutes do not reflect that any explanation was given for adding the agenda item as an emergency matter. *See Carefree Improvement Ass'n v. City of Scottsdale,* 133 Ariz. 106, 113, 649 P.2d 985 (1982) (finding that the circumstances asserted by a public body justifying an emergency meeting did not create an actual emergency). When the Board reached that item on the agenda, upon Grimes' motion, the Board agreed to "instruct their legal counsel to proceed with the direction discussed in Executive Session as to Dr. Mohr's employment." The minutes, however, do not reflect which executive session the Board was referring to, and the minutes from the October 8 executive session have not been included in the appellate record. We also note that neither party has addressed and the record does not establish, whether the Board complied with A.R.S. § 38-431.02(D) and posted a public notice within twenty-four hours after the meeting declaring that an emergency measure had been discussed. Based on this incomplete record, we cannot conclude as a matter of law that the Board fulfilled its obligation to comply with the pertinent sections of Arizona's open meeting law. Therefore, we vacate that portion of the superior court's summary judgment ruling and remand for further proceedings consistent with this decision.[11]

---

[11]     Because we are remanding to the superior court to determine whether the Board complied with the statutory procedures for considering an emergency measure, we do not reach Mohr's other open meeting law

### E. Attorneys' Fees

**¶34** The superior court awarded fees in the Civil Case pursuant to A.R.S. § 12-341.01(A), which authorizes a discretionary award of reasonable attorneys' fees to the successful party in a contested action arising out of contract. We review an award of fees under the statute for an abuse of discretion, and will affirm unless the record indicates no reasonable basis for the award. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18, 99 P.3d 1030, 1035 (App. 2004).

**¶35** The Civil Case arose primarily out of Mohr's allegations that the Board breached his employment contract and the Settlement Agreement. Mohr does not argue the amount of the fee award was unreasonable. Instead, he argues the fee award was improper because insurance covered the fee expense, and thus the Board did not incur fees in this case. Mohr's premise is contrary to Arizona law. *See id.* at 267, ¶ 27, 99 P.3d at 1037 ("[T]hat some portions of appellees' attorney fee expense was covered by insurance does not preclude the fee awards to appellees or otherwise establish any abuse of discretion in those awards."). Although we are vacating in part the superior court's grant of summary judgment in favor of the District, the Board has prevailed on appeal relating to Mohr's claims arising out of contract. Thus, we affirm the superior court's award of attorneys' fees.

**¶36** Both parties have requested an award of attorneys' fees incurred on appeal pursuant to A.R.S. § 12-341.01. Mohr has not prevailed and we therefore deny his request. As to the District, we award reasonable attorneys' fees incurred on appeal upon compliance with Arizona Rules of Civil Appellate Procedure 21.

---

claims challenging the adequacy of the October 8 and October 28 notices, agendas, and minutes and asserting the Board took illegal action during the October 28 executive session. Nor do we express any opinion as to whether a violation of A.R.S. § 38-431.02's emergency exception procedures would affect action taken at any subsequent meetings concerning Mohr's employment. With a fully developed record, the superior court will be able to evaluate the nature of the alleged claims and take appropriate steps to address the open meeting law violations, if any. *See* A.R.S. § 38-431.07 (providing that a court may review in camera the minutes of the executive session, impose civil penalties, award attorneys' fees, and order equitable relief as the court deems appropriate).

¶37   Mohr also requests an award of attorneys' fees on appeal pursuant to A.R.S. § 38-431.07, which provides that a court may award reasonable attorneys' fees to a plaintiff who prevails on a claim of an open meeting violation. We defer this request for fees to the superior court, following a final determination of the merits on remand. *See Tierra Ranchos Homeowners Ass'n*, 216 Ariz. at 204, ¶ 37, 165 P.3d at 182 (deferring party's request for attorneys' fees on appeal "to the trial court's discretion pending resolution of matter on the merits").

## CONCLUSION

¶38   Based on the foregoing, the appeal in the Administrative Case is dismissed. The superior court's judgment in the Civil Case is affirmed in all respects except for the opening meeting law claims (Count 8) that are not tied to the allegations relating to the hiring of Lewis & Roca. We vacate the court's ruling as to those claims and remand for further proceedings.

