969 P.2d 658

**Patricia GFELLER and Richard Gfeller, husband and wife, Plaintiffs–Appellants,**

v.

**The SCOTTSDALE VISTA NORTH TOWNHOMES ASSOCIATION, an Arizona corporation, Defendant–Appellee.**

No. 1 CA–CV 98–0010.

Court of Appeals of Arizona, Division 1, Department A.

Nov. 17, 1998.

Jennings, Strouss & Salmon, P.L.C. by James M. Ackerman and David B. Earl, Phoenix, Attorneys for Plaintiffs–Appellants.

Holloway Odegard & Sweeney, P.C. by Paul W. Holloway and K. Alan Holcomb, Phoenix, Attorneys for Defendant–Appellee.

**OPINION**

FIDEL, Judge.

¶ 1   Plaintiffs Richard and Patricia Gfeller appeal from the trial court's determination that defendant Scottsdale Vista North Townhomes Association has no affirmative duty to enforce applicable Covenants, Conditions, and Restrictions ("CC & Rs") to prevent a neighboring property owner from interfering with drainage of rainwater from the Gfellers' property.

¶ 2   We reverse the trial court's declaratory judgment in favor of the Association.   We find that the CC & Rs impose an affirmative duty upon the Association to enforce the drainage requirements of the CC & Rs, which duty is not negated by provisions that permit the Association to select among alternative methods of enforcement.

FACTUAL AND PROCEDURAL HISTORY

¶ 3   In 1990, the Gfellers purchased a townhome in a community called Scottsdale Vista North Townhomes.   Each building in the Scottsdale Vista North complex contains

several townhome units sharing common side walls. The patio and backyard of each unit are separated from the neighboring yards by shared block walls. Weepholes in each block wall are intended to permit rainwater to flow downward along a common swale and ultimately flow out into common areas or streets.

¶ 4 After purchasing their townhome, the Gfellers discovered that, during heavy rains, their backyard would flood several inches deep; occasionally, rainwater would accumulate on their patio and flood the interior of their home. The Gfellers attribute this flooding to a blockage of intended drainage caused by modifications to the property adjacent to their lot on the downhill side, a property owned by Mr. Vincent Lewis. The Gfellers tried to resolve this condition with Mr. Lewis but could not come to agreement.

¶ 5 All of the property in Scottsdale Vista North is subject to recorded CC & Rs. The CC & Rs create the Association to maintain common areas and exteriors and fulfill other functions. In their complaint against the Association,[1] the Gfellers contend that the CC & Rs oblige it to enforce CC & R drainage rules against Mr. Lewis and correct the drainage problem. The Association responds that it has a right to enforce CC & R drainage provisions, but not a duty to do so.

¶ 6 The parties stipulated to try the duty issue to the court, deferring resolution of the question whether Mr. Lewis had indeed caused the Gfellers' flooding by modifications violative of the CC & Rs. The trial court concluded that the CC & Rs do not impose a duty on the Association to enforce the drainage rules. Because the Gfellers' other claims were premised on the existence of this duty, the court entered a Rule 54(b) certified judgment dismissing all claims against the Association. The trial court awarded the Association its attorney's fees. The Gfellers filed a timely notice of appeal.

### ASSOCIATION DUTY TO ENFORCE DRAINAGE RULES

¶ 7 Has the Association a duty to enforce the drainage rules set forth in the CC & Rs or, as the trial court found, merely the right to enforce them if it chooses? Both parties agree that this issue is controlled by the language of the CC & Rs. We interpret written CC & Rs *de novo* where, as here, there is no extrinsic evidence of the drafter's intent. *See Bryceland v. Northey*, 160 Ariz. 213, 215, 772 P.2d 36, 38 (App.1989).

¶ 8 To support its assertion that it has only a right, and not a duty, to enforce the drainage rules, the Association relies on CC & R Article XIII, Section 4, which provides in pertinent part:

> In the event that an Owner shall fail to maintain his Patio and the improvement [*sic*] located thereon, as provided herein, the Association, after notice to the owner and approval by vote of the Board of Directors, *shall have the right* to enter upon said Patio to correct drainage and to repair, maintain and restore the Patio, fences, and any other improvements erected thereon.

(Emphasis added.)

¶ 9 To support their contrary position, the Gfellers rely on CC & R Article XIV, Section 2, which provides in relevant part:

> Enforcements.... After the date on which this instrument has been recorded, these covenants, restrictions, reservations and conditions may be enforced by the Association or its Board of Directors, which shall have *the right and duty to enforce the same* and expend Association monies in pursuance thereof, and also may be enforced by the owner of any townhome or by the holder of any first mortgage, or deed of trust, or any one or more of said parties.... Enforcements shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant either to restrain violation or to recover damages.

(Emphasis added.)

¶ 10 The Association asserts that Article XIV, Section 2, is inconsistent with Article

---

1. The Gfellers have also sued Mr. Lewis and several other neighbors, but their claims against those parties are not relevant to this appeal.

**54**

XIII, Section 4, and that, to resolve a contractual inconsistency, specific terms control the general. *See, e.g., Brady v. Black Mountain Investment Co.,* 105 Ariz. 87, 89, 459 P.2d 712, 714 (1969). Advancing Article XIII, Section 4, as the more specific provision—the provision pertaining expressly to drainage issues—the Association asserts that it controls.

▇ ¶ 11 We disagree because there is no inconsistency. Article XIV, Section 2, imposes an express "duty" on the Association to enforce *all* of the CC & Rs and the option to do so through proceedings in law or equity. Article XIII, Section 4, which addresses the maintenance of backyards, does not purport to withdraw, trump, or diminish the Association's general enforcement responsibility and power. Rather, it provides one additional means of enforcement—the right to enter a patio/backyard and make repairs itself. Although the Association may exercise this option, it need not; it may initiate legal proceedings against an errant townhome owner instead. But whichever means it chooses, the Association may not forsake its express duty to enforce the CC & Rs.

¶ 12 Our interpretation, which reconciles the two CC & R provisions that we have examined, reconciles other provisions as well. For example, the CC & Rs impose on each owner the obligation to pay assessments; and two sections, one general and one specific, establish the Association's authority and responsibility to enforce the assessment obligation: Article XIV, Section 2, which we have discussed, assigns the Association "the right and duty" to enforce all "covenants, restrictions, reservations, and conditions" and the authority to do so by initiating legal proceedings. All "covenants, restrictions, reservations, and conditions" clearly include the covenant pertaining to assessments; it therefore falls within the Association's general right *and* duty of enforcement under Article XIV, Section 2, to enforce the covenant establishing assessments, and the Association may initiate legal proceedings if necessary to fulfill that duty. Yet the CC & Rs also contain Article II, Section 1(b), which extends the Association the "right" to "suspend the voting rights" of any owner delinquent in

assessments. To apply the Association's theory, we would find that the specific right to suspend voting privileges for unpaid assessments is inconsistent with—and consequently trumps or negates—the Association's general power to enforce assessments by legal action. Yet such an interpretation is neither sensible nor required. In the matter of assessments, as in the matter of drainage, the CC & Rs neither indulge in inconsistency nor relieve the Association of its general duty of enforcement; they merely provide the Association with multiple remedial and enforcement tools.

▇ ¶ 13 The Association asserts that our interpretation of the CC & Rs would render other articles and sections of the CC & Rs "mere surplusage of language." To the contrary, our interpretation gives effect to all provisions of the CC & Rs. We will, if possible, interpret a contract in such a way as to reconcile and give meaning to all of its terms, if reconciliation can be accomplished by any reasonable interpretation. *Hamberlin v. Townsend,* 76 Ariz. 191, 196, 261 P.2d 1003, 1006 (1953). Because the provisions at issue may be read in harmony, the trial court erred in disregarding the "duty" language in Article XIV, Section 2. Although the Association can choose its means of enforcing drainage requirements, it has a duty to enforce them, and the Gfellers are entitled to a declaratory judgment to that effect.

ATTORNEY'S FEES

¶ 14 In light of our conclusion that the Gfellers, not the Association, are entitled to declaratory judgment on the duty issue, we vacate the trial court's award of attorney's fees to the Association.

¶ 15 The Gfellers request an award of their attorney's fees on appeal, pursuant to Ariz.Rev.Stat. Ann. § 12–341.01(A), as the prevailing party in an action arising out of contract. We award such fees because the Gfellers have "achieve[d] reversal of an unfavorable interim order ... that ... is central to the case" and because "the appeal process [has] finally determine[d] an issue of law sufficiently significant that the appeal may be considered as a separate unit." *Wagenseller*

*v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 393–94, 710 P.2d 1025, 1048–49 (1985).

### CONCLUSION

¶ 16  Because we conclude that the Association has a duty to enforce the CC & Rs, we reverse summary judgment in favor of the Association on the issue of duty. We remand for entry of judgment in favor of the Gfellers on the issue of duty and for further proceedings consistent with this decision. We also vacate the trial court's award of attorney's fees to the Association, and we award the Gfellers reasonable appellate attorney's fees in an amount to be determined upon their compliance with Rule 21(c), Arizona Rules of Civil Appellate Procedure.

RUDOLPH J. GERBER, Presiding Judge, SARAH D. GRANT, Judge, concur.