73 P.3d 616

David C. JOHNSON and Wendee L. Johnson, husband and wife, Plaintiffs–Appellants,

v.

The POINTE COMMUNITY ASSOCIATION, INC., an Arizona non-profit corporation; Patrick Boyle and Carol Boyle, husband and wife, Defendants–Appellees.

No. 1 CA–CV–02–0160.

Court of Appeals of Arizona, Division 1, Department E.

July 31, 2003.

the Arizona Supreme Court. See ARIZ. CONST. art. 6, § 31; A.R.S. § 12–145 et seq. (1992 & Supp. 2002).

ing residences at the Pointe.[1] The Johnsons also allege that the exposed electrical wiring on the Boyles' altered patio violates the requirements of the Declaration.

¶2 On cross-motions for summary judgment the trial court ruled that while material issues of fact may exist as to whether the Boyles violated the deed restrictions, public policy dictated that the court defer to the Association's decisions on those issues so long as they were made in good faith. Accordingly, the trial court entered judgment on behalf of Defendants, and awarded the Boyles their attorneys' fees. For the reasons discussed below, we reverse the trial court's judgment, vacate the award of attorneys' fees, and remand for further proceedings.

Barry J. Dale, Phoenix, Attorney for Appellants.

Mulcahy Law Firm, P.C., by Beth Mulcahy, Jonathan Burwood, Phoenix, Attorneys for Appellee Pointe Community Association.

Shorall McGoldrick Brinkmann, P.C., by Daniel W. McCarthy, Paul J. McGoldrick, Phoenix, Attorneys for Appellees Boyles.

## OPINION

SNOW, Judge.

¶1 Appellants David C. and Wendee L. Johnson ("the Johnsons") appeal the judgment entered against them on their claims against their homeowners' association, The Pointe Community Association ("the Association"), and their neighbors, Patrick and Carol Boyle ("the Boyles") (collectively "Defendants"). The Johnsons brought these claims when the Association declined to require the Boyles to obtain prior approval for the change in texture of the stucco on the back of their home. The Johnsons assert such approval is required by the declaration govern-

## I. BACKGROUND

¶3 In early December 1999, the Boyles, as part of some landscape renovations, erected a trellis next to the wall that separates their backyard from the Johnsons' backyard. They also altered the texture of the stucco on their backyard patio columns and the exterior backyard wall of their home.[2] In so doing they claim to have removed, and then replaced, an electrical conduit line of approximately one-half inch in size that was originally installed by the developer.

¶4 A disagreement arose between the Boyles and the Johnsons regarding the alterations—particularly the trellis. Shortly thereafter the Association learned of the alterations and informed the Boyles that, pursuant to the Declaration, approval was required prior to altering the exterior appearance of their property. The Association requested that the Boyles comply with the Declaration by requesting authorization for their changes from the Association's Architectural Committee. When the Boyles failed to immediately seek such authorization, the Association sent a second notice to

---

1. The Pointe Resort Residential Community is subject to a Restated Declaration: Homeowner Benefits and Assurances (the "Declaration"). This Declaration contains restrictive covenants binding each of the residences at the Pointe. It also creates the Association, in which each residence owner has membership. The Declaration

provides for the enforcement of its provisions by either the Association or its members.

2. The standard stucco on homes at the Pointe has a rough texture. The Boyles altered their backyard stucco texture to a smoother surface.

the Boyles informing them that the alterations and their non-compliance with the Declaration would be discussed at a board meeting scheduled for January 19, 2000 at which they could be heard regarding the dispute.

¶ 5 On January 7, the Boyles submitted some information to the Architectural Committee along with a form requesting authorization for the construction of the trellis. At approximately the same time, the Johnsons also sent a memorandum to the Association's board specifying their objections to the alterations. Although the Johnsons' principal complaint in the memorandum was the trellis, the Johnsons also complained about other alterations, including the paint color and the changed texture of the stucco on the Boyles' wall and columns.[3]

¶ 6 At the board meeting, the Boyles were directed to submit additional information to the Architectural Committee in conjunction with their request for approval of the trellis. On February 3, the Boyles complied with this direction. On that same date, in a separate memorandum to the Committee, the Johnsons withdrew their complaint about the paint color on the new stucco. "It has been pointed out to us that it probably is the required paint and that the non-textured, smooth stucco finish just gives the appearance of a lighter color. Also, the raw beam roof work we were concerned about has now been enclosed. Therefore neither of these items remain an issue."[4]

¶ 7 Two days later the Architectural Committee visited the property involved to inspect the trellis. After the inspection, the Committee refused to approve the existing trellis, but proposed two alternative designs that it indicated would be approved. The Committee informed both parties of its decision.

¶ 8 The Johnsons then raised a new complaint about the Boyles' backyard project.

In a memorandum to the board dated February 16, 2000, the Johnsons complained about the Boyles' continuing non-compliance with the Association's trellis decision. They further complained that the electrical conduit mounted by the Boyles in the alteration process violated a Declaration provision which required that electrical lines be concealed.

¶ 9 In response, the Association advised the Johnsons that the Committee had given the Boyles ninety days to remedy the trellis situation[5] and that, regarding the electrical wiring, the board had decided not to enforce the issue other than to instruct the Boyles to paint the conduit Navajo White-the exterior paint color specified by the Declaration. The letter further noted, however, that the Boyles had already painted the conduit this color.

¶ 10 The Johnsons responded that the board did not have the discretion to ignore the Declaration's requirement that electrical lines be concealed. The Johnsons also wrote to the attorney for the Association making the same assertion.

¶ 11 Months later, in January 2001, after a new board was installed, the Johnsons again wrote to the board noting that their complaints against the Boyles regarding the change of stucco texture and the installation of the electrical conduit had not been addressed. They demanded that the board direct the Boyles to submit the stucco texture change to the Association's Architectural Committee for approval. They further demanded that the Boyles be required to conceal the electrical conduit by remounting it inside the roof trim and the patio column.

¶ 12 When the board took no additional action, the Johnsons filed their complaint in superior court in May 2001. In the complaint, the Johnsons asserted claims against the Association for breach of contract, breach of fiduciary duty, and declaratory, injunctive

---

**3.** The Johnsons stated that "[d]uring the above time frame, Ms. Boyle had the textured stucco walls and columns, also visible from our home, overlaid with a smooth finish and painted a non-authorized [color]."

**4.** Defendants claim that this constituted a withdrawal of the Johnsons' objections about the

change in stucco texture. This argument, at best, presents an issue of fact.

**5.** The issue of the trellis was subsequently resolved and was not raised in the complaint the Johnsons filed in superior court.

and equitable relief. The Johnsons also asserted claims against the Boyles for breach of contract and injunctive and equitable relief.

¶ 13 The Johnsons moved for partial summary judgment on the Association's duty to enforce the Declaration. The Association responded and cross-moved for summary judgment on all the Johnson's claims against it. The Boyles joined the Association's response and cross-motion.

¶ 14 In its cross-motion, the Association agreed that it was obligated to enforce the terms of the Declaration but argued that it had met that obligation because the electrical conduit in question had originally been placed by the developer, and thus was not subject to the Declaration's requirement that all electrical wiring be concealed. It further asserted that formal Architectural Committee approval of the new stucco texture was unnecessary. Finally, it argued that public policy required the court to defer to the Association's decisions in this regard and thus the Johnsons' case should be dismissed.

¶ 15 The trial court agreed. Even though it concluded that there were issues of fact as to whether the Boyles were in violation of the requirements of the Declaration, the court also concluded that the Association had formally or informally addressed in good faith the issues raised by the Johnsons. Thus, it held that public policy dictated that the court defer to the Association's findings. Accordingly, it entered judgment in favor of the Association and the Boyles on all the Johnsons' claims. It further awarded the Boyles $4,560 in attorneys' fees to be recovered from the Johnsons. The Johnsons timely appealed the judgment.

## II. ANALYSIS

### A. The Association's Determination Was Not Entitled To Deference.

¶ 16 The superior court, as the court of general jurisdiction, Ariz. Const. art. 6, § 14, generally makes the findings of fact and determinations of law necessary to enter a judgment. *See Tucson Gas & Elec. Co. v. Superior Court*, 9 Ariz.App. 210, 212–13, 450 P.2d 722, 724–25 (1969) ("The function of courts is to put an end to litigation."). The court defers to the decisions of others only in limited circumstances.

¶ 17 For example, if parties have provided for dispute resolution by a skilled neutral, the decision is, for the most part, enforced by a superior court. *See, e.g.,* Ariz.Rev.Stat. ("A.R.S.") §§ 12–1511 to –1516 (2003) (providing for entry of judgment on a qualifying arbitration award without further proceedings). Similarly, the superior court will uphold the determinations of a state administrative agency "unless after reviewing the administrative record and supplementing evidence presented at [an] evidentiary hearing the court concludes that the action is not supported by substantial evidence, is contrary to law, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12–910(E) (2003).[6] Further, although it may not be a matter of deference, when the parties or their privies have had a full and fair opportunity to litigate all or part of a question in a previous proceeding, the superior court may decide that those matters have been conclusively decided under the doctrines of claim or issue preclusion.

¶ 18 The Association does not claim in this instance that the Declaration contains, or that the Association followed, dispute resolution procedures. Accordingly, its determinations are not entitled to deference on that basis. *See, e.g., Little Whale Cove Homeowners Ass'n, Inc. v. Harmon*, 162 Or.App. 332, 986 P.2d 616, 619 (1999) (determination by Association's board not entitled to deference when "[t]he CC & R's do not give the Homeowners Association or its Board the authority to resolve disputes arising under the CC & Rs or the Architectural Guidelines."). Nor does the Association claim the status of an administrative agency for purposes of obtaining deference to its decisions either through the state administrative procedures act, *see, e.g., Riss v. Angel*, 80 Wash. App. 553, 912 P.2d 1028, 1033 (1996) (deter-

6. Even when it reviews the civil determinations of lower courts, a superior court is not bound to give them deference. *See* Ariz.Super. Ct. R.App. P. (Civ.) 18(b) ("The superior court shall have full authority to decide all questions of law and fact.").

minations of homeowners board not entitled to deference under state administrative procedures act), or the doctrines of issue or claim preclusion. *See Smith v. CIGNA HealthPlan of Ariz.*, 203 Ariz. 173, 179, ¶ 21, 52 P.3d 205, 211 (App.2002) (when agency appropriately renders a decision in its quasi-judicial capacity, its determinations can have preclusive effect).

¶ 19 Rather, in arguing both here and before the superior court that its decisions regarding the Johnsons' complaints were entitled to judicial deference, the Association relies principally on the public policy set forth in *Lamden v. La Jolla Shores Club-dominium Homeowners Ass'n*, 21 Cal.4th 249, 87 Cal.Rptr.2d 237, 980 P.2d 940 (1999). *Lamden* does not support the Association's premise, adopted by the superior court, that its decisions require deference.

¶ 20 In *Lamden*, the plaintiff sued her homeowners association, alleging that its decision to "spot treat" for termites, as opposed to fumigating the entire building in which her condominium was located, diminished the value of her unit. 87 Cal.Rptr.2d 237, 980 P.2d at 942. On review, the California Supreme Court noted that the declaration governing Lamden's common interest development gave the development's association broad discretion in deciding how to maintain the complex. *Id.* 87 Cal.Rptr.2d 237, 980 P.2d at 950. The court held that when a declaration gives an association discretion to select among various means to accomplish an obligation imposed by the declaration or by law, California courts will deferentially review the Association's choice of means. *Id.* 87 Cal.Rptr.2d 237, 980 P.2d at 942.

Where a duly constituted community association board, upon reasonable investigation, in good faith and with regard for the best interests of the community association and its members, *exercises discretion within the scope of its authority under relevant statutes, covenants and restrictions to select among means for discharging an obligation to maintain and repair a development's common areas, courts should defer to the board's authority and presumed expertise.*

*Id.* (emphasis added). Finding that the decision to "spot treat" the termites did not violate the association's obligations under the deferential standard of review it adopted, the court affirmed the superior court's entry of judgment against the plaintiff. *Id.* 87 Cal. Rptr.2d 237, 980 P.2d at 950.[7]

¶ 21 *Lamden* also made clear that a court's deference to the discretion provided in the Declaration did not forestall an action against the association to enforce the terms of the declaration. 87 Cal.Rptr.2d 237, 980 P.2d at 953. "[A] homeowner can sue the association for damages and an injunction to compel the association to enforce the provisions of the declaration. More importantly ... the homeowner can sue directly to enforce the declaration. Nothing we say here departs from those principles." *Id.* (internal citations and quotation marks omitted).

¶ 22 Thus, while *Lamden* protects the discretion to act given to a governing association by its declaration, *Lamden* does not even infer that an association's interpretation of its own restrictive covenants in a dispute with a homeowner is entitled to deference from the superior court. Such deference is inappropriate.[8]

¶ 23 In Arizona, a recorded declaration that contains restrictive covenants common to all properties in a development forms a contract between "the [development's] property owners as a whole and the individual lot owners." *Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App.1993) (citing *Divizio v. Kewin En-*

---

**7.** We need not decide whether Arizona would adopt the deferential standard of review set forth in *Lamden* to resolve this appeal. Therefore, we do not address that issue.

**8.** The Association also cites *Levandusky v. One Fifth Avenue Apartment Corp. (In re Levandusky)*, 75 N.Y.2d 530, 554 N.Y.S.2d 807, 553 N.E.2d 1317, 1322 (1990) for the proposition that New York courts will defer to a housing cooperative's enforcement of its building policy. While this is true, that deference again does not prevent a cooperative member from bringing suit against the cooperative when the board action "is taken without notice or consideration of the relevant facts, or is beyond the scope of the board's authority." *Id.* 554 N.Y.S.2d 807, 553 N.E.2d at 1323.

*ters., Inc.*, 136 Ariz. 476, 481, 666 P.2d 1085, 1090 (App.1983)). The interpretation of restrictive covenants is a question of law for the court. *Id.* ("The interpretation of a contract is a matter of law and not a question of fact."). In interpreting the meaning of a covenant, the superior court does not defer to the interpretation given by the association. *Cf. id.* (because interpretation of restrictive covenants is a matter of law, "the Court of Appeals is not bound by conclusions of law reached by the trial court.").

■ ¶ 24 Even when a declaration authorizes the exercise of discretion in complying with its provisions, the association still must comply with the declaration's requirements, and association members are entitled to judicial recourse to ensure such compliance. *Gfeller v. Scottsdale Vista N. Townhomes Ass'n*, 193 Ariz. 52, 54, ¶ 11, 969 P.2d 658, 660 ("[W]hichever means [of enforcement] it chooses, the Association may not forsake its express duty to enforce the CC & R's.").

■ ¶ 25 "Because of its considerable power in managing and regulating a common interest development, the governing board of an owners association must guard against the potential for the abuse of that power." *Nahrstedt v. Lakeside Village Condo. Ass'n*, 8 Cal.4th 361, 33 Cal.Rptr.2d 63, 878 P.2d 1275, 1281–82 (1994). In the absence of declaration provisions providing alternative means of resolving disputes arising from the enforcement of restrictive covenants, both homeowners and their associations are entitled to bring their case before the courts without either party's position receiving deference. The civil courts afford a neutral interpretation of the development's declaration and "significant protection against overreaching" by either homeowners or their association. *See Lamden*, 87 Cal.Rptr.2d 237, 980 P.2d at 952.

¶ 26 Because the question at issue here is whether the Association acted in compliance with its governing declarations, the superior court erred when it gave deference to the determinations of the Association in entering judgment on behalf of Defendants.

## B. Defendants' Other Arguments Do Not Entitle Them To Summary Judgment.

¶ 27 None of the other arguments raised by Defendants justify the entry of summary judgment.

### 1. The Electrical Conduit

■ ¶ 28 Neither party contests that the electrical conduit line on the Boyles' patio is not concealed as required by section 3.4 of the Declaration, which states that "[a]ll ... electric ... lines shall be located either underground or concealed within or under buildings or other structures." Rather, Defendants argue that the Boyles are exempted by section 3.14 from the concealment requirement of section 3.4 because the electrical conduit was first placed in the contested location by the developer of the subdivision.[9] The parties apparently agree that the prohibition against exposed electric lines does not apply to lines replaced by a homeowner so long as they are replaced in the same location where they were originally installed by the developer. The parties, however, cite no other provision of the Declaration that gives the Association the discretion to waive compliance with the prohibition on exposed electrical conduits.

¶ 29 In their motion for summary judgment, the Johnsons presented evidence that the Boyles, not the developer, originally installed the conduit. The Association and the Boyles presented contrary evidence. Even if, as the Association claims, the board concluded that the conduit was installed by the developer, the Association's factual determinations are not entitled to deference by the superior court.[10] *See, e.g.*, ¶ 18, *supra.* Ac-

---

9. Section 3.14 provides in relevant part that "[i]n developing the Property and constructing Residences, Developer shall not be subject to the limitations of this paragraph 3 and nothing contained in this Declaration shall prohibit or interfere with such activities by Developer or its agents."

10. Even if the Association's determinations were entitled to deference, its statement of facts in support of its cross-motion is not supported by specific citation to the record as required by Arizona Rule of Civil Procedure 56(c)(2). Accordingly, we cannot ascertain that the Board

cordingly, the entry of summary judgment on this point must be reversed and remanded.

### 2. The Change In Stucco Texture

¶ 30 Section 3.9 of the Declaration specifies that:

No structures, improvements, ... changes ... alterations, repairs, painting ... or other work which in any way affects or alters the exterior appearance of any Residence or the Improvements thereon shall be initiated without the prior written approval of the Architectural Committee.

Defendants make no attempt to argue that the Boyles' change from a rough to a smooth stucco texture did not change the external appearance of their residence. Further, Defendants admit that the Architectural Committee never authorized the Boyles to change the texture of the stucco on their home as the Declaration requires. *See* Declaration § 8.6 ("The Architectural Committee shall not be deemed to have approved or disapproved any proposal unless in writing signed by at least two current, regular members."); *id.* at § 8.3 ("[T]he vote or written consent of any two regular members, at a meeting or otherwise, shall constitute the act of the Committee. The Committee shall keep and maintain a written record of all actions taken by it at such meetings."). As with the electrical conduit requirement, we find no provisions in the Declaration that give discretion to the Architectural Committee to waive compliance with the prior authorization requirement for an alteration that changes the exterior appearance of any residence.

¶ 31 The Association argues that section 3.9 vests in the Architectural Committee the sole power to approve or disapprove modifications. In passing upon such planned improvements, "[t]he Architectural Committee [has] the right to refuse to approve any plans or specifications ... which are not suitable or desirable, in its sole opinion, for aesthetic or other reasons." *Id.* at § 3.9. Thus, the Association argues, the Declaration gives the Architectural Committee discretion in approving alterations to which the court should defer.

¶ 32 We might agree that discretion, worthy of at least some judicial deference, is vested in the Committee to either approve or disapprove alterations to a residence's exterior appearance in the Pointe. But the Johnsons are not challenging the Architectural Committee's approval or disapproval of such a request. The Johnsons challenge the Boyles' completion of exterior appearance modifications without ever applying for prior authorization for the stucco change and without ever obtaining either approval or disapproval. That is a different question in which the Declaration gives members of the Association, and the Association itself, no discretion.

¶ 33 The Association also argues that the Architectural Committee has promulgated required guidelines for alterations at the Pointe, and that the Boyles' alterations are within these guidelines. While the guidelines do spell out some requirements for alterations, they do not purport to waive the requirement for prior approval by the Architectural Committee even if the guidelines are otherwise met. Nothing in the guidelines suggests such a waiver. We will not interpret the guidelines in a way that renders the provisions of the Declaration meaningless. *Gfeller*, 193 Ariz. at 54, ¶ 13, 969 P.2d at 660 ("We will, if possible, interpret a contract in such a way as to reconcile and give meaning to all of its terms, if reconciliation can be accomplished by any reasonable interpretation."). At any rate, it is not clear from the record that the Boyles' alterations complied with the guidelines.

¶ 34 The Boyles also argue that, strictly interpreted, section 3.9 of the Declaration "prevents homeowners from mowing their lawns, raking leaves, trimming bushes, planting flowers, or in any way altering the appearance of their property without first obtaining written approval from the Association." The Boyles argue that such a reading is absurd and would allow "[e]ntire communities [to] be paralyzed by the obstinance of a single homeowner."

¶ 35 While such a reading might indeed be absurd, whether the Boyles are allowed to

made the determinations that the Association      claims it did.

mow their lawn is not at issue here. At any rate, other Declaration provisions require residents to maintain their landscaping. Declaration §§ 3.7–3.8. Further, the Johnsons have not sought a ruling preventing the Architectural Committee from approving the Boyles' alteration. They have only sought to require the Boyles to obtain approval from the Architectural Committee for that alteration. Thus, "the obstinance of a single homeowner" cannot prevent the Boyles' alterations. Only a refusal by the Architectural Committee to approve the alterations may do so.

¶ 36 The Boyles do not contest that the change in their stucco texture altered the exterior appearance of their residence. And, section 3.9 makes clear that a change in exterior texture is a factor the Architectural Committee may consider in evaluating whether to approve alteration plans. "[The Architectural Committee] shall have the right to take into consideration ... the color, texture and materials of which [the proposed alteration] is to be built." *Id.* at § 3.9. Thus, while exacting, the plain terms of the Declaration require approval of the Boyles' alteration to their stucco.

¶ 37 To the extent that Defendants wish to argue that these Declaration provisions are not enforceable against them on other grounds, they may do so on remand. But, upon this record, we cannot determine that such defenses justify the court's entry of summary judgment.

¶ 38 In granting summary judgment, the superior court did not separately analyze Plaintiffs' breach of fiduciary duty claim. The court apparently held that because the Association's determinations concerning the Declaration were entitled to deference, there was no breach of fiduciary duty. Because, however, we reverse the reasoning of the superior court in that regard, we also reverse the superior court's dismissal of the breach of fiduciary duty claim and remand for further consideration.

## III. CONCLUSION

¶ 39 For the reasons stated above, we vacate the judgment entered on behalf of the Association and the Boyles and we further vacate the award of attorneys' fees to the Boyles. We remand for further proceedings consistent with this opinion.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and CECIL B. PATTERSON, JR., Judge.