NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

LARISA LEE SEMBOWER, *Petitioner/Appellee*,

*v.*

GREG LITMAN SEMBOWER, *Respondent/Appellant*.

No. 1 CA-CV 20-0210 FC
FILED 3-4-2021

Appeal from the Superior Court in Maricopa County
No.  FN2019-092241
The Honorable Joan M. Sinclair, Judge

**AFFIRMED**

COUNSEL

Jeffrey M. Zubriggen PC, Phoenix
By Jeffrey M. Zurbriggen
*Counsel for Petitioner/Appellee*

The Murray Law Offices PC, Scottsdale
By Stanley D. Murray
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Cynthia J. Bailey joined.

---

**H O W E**, Judge:

**¶1**   Greg Littman Sembower ("Husband") appeals from the trial court's decree dissolving his marriage to Larissa Lee Sembower ("Wife"). Husband claims that the court erred in interpreting the parties' premarital agreement to find a community interest in Husband's 401(k) account that had to be shared with Wife. We affirm the trial court's ruling that Wife was entitled to an equal share of the community property contributions made to the account and any appreciation or increase attributable to those contributions.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**   Husband and Wife lived together and filed an affidavit of common-law marriage in Colorado on December 28, 2013, so that Wife could qualify for health insurance through Husband's employer. Before they filed the affidavit, they signed a prenuptial agreement. The parties created the agreement with the understanding that both parties had been previously married, had children from their previous marriages, and intended to "define their rights and responsibilities regarding property and financial matters to the extent these can be foreseen."

**¶3**   The agreement stated that neither party would be obligated to support the other upon the dissolution of their marriage. The agreement also stated that "as otherwise provided in this Agreement, the following property now owned by either party shall remain and be their separate property. . .[t]he property currently owned by each party is described on Exhibits A and B to this Agreement." Exhibit A included Husband's retirement account, which had an approximate value of $860,000 at the time.

**¶4**   The agreement stated that on dissolution of marriage, the following provisions shall apply:

> a. Each party shall have an equal interest in all property acquired by either party during the course of marriage (except

property that is merely the result of an increase in the value of property owned separately by the parties prior to the marriage, as listed on the attached schedules). ["Clause a"]

b. All savings, investment, retirement accounts, and all property listed on the attached schedules as separate property (owned by a party prior to the marriage) shall remain the separate property of that party who brought such property into the marriage, including any appreciation, income, or other increase in property.

Husband disclosed that his net worth was slightly over a million dollars at the time of the agreement. Wife disclosed that she had more liabilities than assets but that she received $55,000 a year in child support. The agreement contained a severance clause that provided that if any of its terms were ruled invalid, the remainder of the agreement would still be effective. The agreement also stated that the parties entered the agreement voluntarily and that they each waived further disclosures and accepted the amounts in the exhibits as their probable value. The parties subsequently held a marriage ceremony on January 16, 2016.

¶5            At the start of 2017, the retirement account's value was $1,108,768.88. Husband's payroll deductions and employer's contributions to the account totaled $45,077.68 in 2017, $70,753.50 in 2018, and $46,585.08 as of August 31, 2019. Wife filed for dissolution of the marriage in August 2019, and requested, among other things, an equitable distribution of the community property acquired during marriage and an award of spousal maintenance as allowed under A.R.S § 25–319. At that time, the account's approximate value was $3.2 million.

¶6            In his pretrial statement, Husband asserted under the agreement that Wife was not entitled to spousal maintenance and that the account was his sole and separate property upon dissolution. In her pretrial statement, Wife opposed the validity of the agreement:

The disclosures on Exhibit "A" indicate[s] Husband had retirement plans in 2013—3 years prior to marriage of only $860,000. Husband has never disclosed—to this day—what the value of his retirement plans were on the date of marriage.

¶7            Wife testified that the agreement entitled her to her share of the communal contributions made to the account during their marriage as well as the appreciation, increases, and incomes related to those contributions. She conceded that Exhibit A included the account and that

the balance in the account at the time of marriage would remain Husband's sole and separate property, including any increases, income, and appreciation that increased that balance during the marriage. She also testified that Husband wanted the agreement, drafted it, and gave it to her on the day they signed it. Wife also submitted an affidavit of common law marriage, reversing her course from her pretrial statement and arguing that the marriage occurred on December 28, 2013.

¶8         Husband testified that the agreement made the account and increases to it from contributions during the marriage his sole and separate property. He testified that Wife wanted the agreement so that he could keep his 401(k) and home. Finding a template online, he modified the agreement according to her wishes. Husband agreed that the date of their marriage was December 28, 2013, stating that they submitted the affidavit of common law marriage and entered the agreement so Wife could enroll in his employer's health care plan before the new year.

¶9         During a break in the testimony, the trial court had counsel come back to its chambers "to chat." When trial resumed, the parties discussed matters pertaining to the parties' real estate holdings, and Wife's counsel then examined Husband about his credibility, the couple's income and debts, and real property matters. At one point in the examination, Husband's counsel stated that Husband was waiving certain arguments about the prenuptial agreement's application to the real estate "based on your ruling on the prenup earlier today," but did not state what the trial court's ruling had been.

¶10        The trial court subsequently entered the Decree of Dissolution of Marriage on February 19, 2020, recognizing the validity of the agreement by denying Wife's request for spousal maintenance and finding the legal marriage date was January 16, 2016. The Court ordered an equal division of the parties' community property and debt. The court further determined that while the retirement account was Husband's, Wife was entitled to her share of the community contributions and assigned an expert to prepare a qualified domestic relations order ("QDRO") to determine the community interest in the account to be "equitably divided" between Husband and Wife. Husband timely appealed. We have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") section 12–2101(C) (2003).

¶11        After Husband appealed, Wife moved the trial court to correct and clarify the marriage date as being December 28, 2013. The trial court determined the motion to be untimely filed under Arizona Rule of

Family Law Procedure 83, which requires motions to amend or alter a judgment be filed within 25 days after the entry of judgment. The trial court reasoned that

> [b]ecause the issue here is the date of marriage in relation to the QDRO, changing the date of marriage in the decree would essentially change the judgment as it would have an effect on the QDRO. Therefore, the Court cannot grant the motion on this basis.

## DISCUSSION

¶12 Husband argues that the court erred in finding a community property interest in the account. We review the court's interpretation of the prenuptial agreement *de novo* and apply principles of contract interpretation. *See Rand v. Porsche Fin. Servs.*, 216 Ariz. 424, 434 ¶ 37 (App. 2007).

¶13 We interpret a contract to reconcile and give meaning to all its terms if reconciliation can be accomplished reasonably and will avoid making language mere surplusage. *Gfeller v. Scottsdale Vista N. Townhomes Ass'n*, 193 Ariz. 52, 54 ¶ 13 (App. 1998). The purpose of interpretation is to determine the parties' intent and enforce that intent, *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, 593 ¶ 9 (App. 2009), as reflected in the contract's language, *see Harris v. Harris*, 195 Ariz. 559, 562 ¶ 15 (App. 1999). If the intention of the parties is clear and unambiguous in view of all circumstances, we apply the plain meaning of the terms of the contract. *Id.*; *see also Earle Investments, LLC v. S. Desert Med. Ctr. Partners*, 242 Ariz. 252, 255 ¶ 14 (App. 2017) ("[We] look to the plain meaning of the words as viewed in the context of the contract as a whole."). "A contract is not ambiguous just because parties disagree about its meaning." *In re Estate of Lamparella*, 210 Ariz. 246, 250 ¶ 21 (App. 2005). Whether a contract "is susceptible to more than one interpretation is a question of law, which we review *de novo*," *Grosvenor Holdings*, 222 Ariz. at 593 ¶ 9, but if it is susceptible to more than one interpretation, we defer to the court's findings of fact, including any findings on the parties' intent, *see Chopin v. Chopin*, 224 Ariz. 425, 428 ¶ 7 (App. 2010).

¶14 Absent parties' express intent, employer and employee contributions to a retirement account during marriage create a community interest in those contributions. A.R.S § 25-211; s*ee also Koelsch v. Koelsch*, 148 Ariz. 176, 181 (1986) (holding that pension plans, as a form of deferred compensation to employees for services rendered, are considered

community property when earned through employment during marriage.). Under the agreement's Clause a, "[e]ach party shall have an equal interest in all property acquired by either party during the course of marriage (except property that is merely the result of an increase in the value of property . . .)." Clause a's plain terms state that Wife has an interest in all property acquired during the marriage, which includes Husband's employee and employer contributions to the account.

¶15 Husband nonetheless argues that the agreement grants him the entire account, including the portions contributed during marriage and the increases from those contributions. Husband relies on the parenthetical portion of Clause a, which states (except property that is merely the result of an increase in the value of property . . . )," and Clause b which states that the account "shall remain the separate property of that party who brought such property into the marriage, including any appreciation, income, or other increase in property." While "increases" includes appreciation growth during the time of marriage, *see Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979), an increase by its plain meaning does not include something added to it from an external and independent source, such as community labor and contributions, *see id*. Employee and employer contributions are "additions" to the account from an independent source or labor and not "increases" to Husband's sole and separate property. Because the contributions are from an external source, they are not contemplated in Clause b or the parenthetical of Clause a and are community property.

¶16 The trial court therefore correctly ruled that Wife was entitled to her share of the contributions to the account from community property. The parties express some confusion because the Decree does not identify the portion of the account that is community property and state how that portion is divided. But the Decree is clear that "an equal division of community property is appropriate to achieve equity" in this case and that the account must be "equitably" divided by the QDRO expert. Although the Decree does not state what portion of the account is community property, the Decree orders that the parties shall cooperate with the QDRO expert "to provide all plan statements necessary to perform any required calculations to divide the plan(s) as called for in this order." Uncontroverted evidence at the hearing showed that Husband and his employer contributed identified amounts to the account during Husband and Wife's marriage, and from the plan statements, the QDRO expert will

be able to determine the portion of the account that constitutes community property to be divided equally.[1]

¶17        Wife argues that the court found that the community contributions transmuted the entire account to community property subject to equitable division. But this is not true. Wife waived all right to the properties enumerated in Exhibit A held before marriage and their increases under the terms of the agreement. Wife conceded that Exhibit A included the account. The agreement further stated that all "retirement accounts, and all property listed on the attached schedules as separate property . . . shall remain the separate property of that party who brought such property into the marriage including any appreciation, income, or other increase to such property." The agreement unambiguously states that the amount of the account at the time of marriage and appreciation, income, and increases to it during the marriage shall remain Husband's sole and separate property on dissolution.

¶18        Wife also argues, for the first time on appeal, that the account was not properly listed on Exhibit A and therefore Husband cannot rely on the agreement to rebut the presumption that the account is entirely community property. Wife conceded, however, that at the time of signing the agreement, she knew Exhibit A referred to the account, that Husband was entitled to what was in the account before marriage and all increases to that amount during marriage and cannot now argue otherwise. *See Clark Equip. Co. v. Ariz. Prop. & Cas. Ins. Guar. Fund*, 189 Ariz. 433, 439 (App. 1997).

¶19        Wife further argues that the agreement is invalid because she signed it under duress and it was otherwise unconscionable. But the trial court found the agreement valid because it denied the parties any spousal maintenance based on the agreement's terms that no spousal maintenance would be awarded if the parties divorced, and Wife did not cross-appeal that ruling. We therefore have no jurisdiction to consider any claims that the agreement was invalid. *Engel*, 221 Ariz. at 510 ¶ 17.

---

[1]        Wife asks this Court to recognize that the parties' marriage date as December 23, 2013. We have no jurisdiction to do so. The trial court found as fact that the parties were married on January 16, 2016, the evidence supports that finding, and Wife did not appeal that finding. Because finding that the parties were married at an earlier date would enlarge her rights and lessen Husband's rights under the Decree, Wife was required to cross-appeal the Decree if she wished appellate review of the trial court's finding. *Engel v. Landman*, 221 Ariz. 504, 510 ¶ 17 (App. 2009).

## CONCLUSION

¶20        For the reasons stated, we affirm the trial court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:    AA