NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

HERITAGE VILLAGE II HOMEOWNERS ASSOCIATION,
*Plaintiff/Appellee*,

v.

RICHARD WEINBERG, et al.,
*Defendants/Appellees*.

---

JOHN L. NORMAN and GERRY MOLOTSKY
*Intervenors/Appellants*.

No. 1 CA-CV 20-0637
FILED 10-26-2021

---

Appeal from the Superior Court in Maricopa County
No. CV2014-009229
The Honorable M. Scott McCoy, Judge

**AFFIRMED IN PART; VACATED IN PART AND REMANDED**

---

COUNSEL

Dickinson Wright, PLLC, Phoenix
By Scott A. Holcomb, Emily Jeffries
*Counsel for Plaintiff/Appellee*

Taylor Young Appeals, PLLC, Phoenix
By Taylor C. Young
*Counsel for Defendants/Appellees*

Fennemore Craig, PC, Phoenix
By Douglas C. Northup, Emily Ayn Ward, Taylor N. Burgoon
*Counsel for Intervenors/Appellants*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge David B. Gass joined.

---

**M O R S E**, Judge:

**¶1**        John Norman and Gerry Molotsky (together, "Intervenors") appeal the dismissal of their suit against Richard and Laine Weinberg for alleged violations of Heritage Village II's Amended and Restated Declaration of Covenants, Conditions & Restrictions ("CC&Rs"). For the following reasons, we affirm the dismissal, but vacate and remand the award of attorneys' fees.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        The Weinbergs own a home located in Heritage Village II ("Heritage"), which is part of the McCormick Ranch master-planned community in Scottsdale. Beginning in 2013, the Weinbergs undertook to replace their home with a larger dwelling. In July 2014, Heritage sued the Weinbergs, alleging the changes to their lot violated the CC&Rs. The superior court concluded the Weinbergs had violated the CC&Rs, granted declaratory relief, and ordered the Weinbergs to take specific remedial measures to bring their home into compliance.

**¶3**        Months later, the superior court noted that the parties remained unable to agree on necessary modifications for the Weinbergs' home to comply with the CC&Rs. Meanwhile, the membership on Heritage's Board of Directors (the "Board") changed and the Board debated whether to continue the litigation. In July 2017, the Board voted to settle with the Weinbergs.

¶4        Intervenors are homeowners and members of Heritage. Before Heritage and the Weinbergs filed their notice of settlement, Intervenors filed an emergency motion to intervene. Heritage and the Weinbergs opposed Intervenors' motion. The superior court denied the motion and awarded Heritage and the Weinbergs attorneys' fees. Intervenors appealed. This Court reversed the superior court's ruling on the motion to intervene, vacated the attorneys' fees award, and denied the Weinbergs' and Heritage's requests for fees and costs on appeal. *Heritage Vill. II Homeowners Ass'n v. Norman* ("*Heritage I*"), 246 Ariz. 567, 573, ¶ 26 (App. 2019).

¶5        After the appeal, Intervenors filed a complaint in intervention, naming only the Weinbergs as defendants. The Weinbergs filed a motion to dismiss for failure to state a claim, which Heritage joined. The superior court granted the motion and awarded Heritage and the Weinbergs attorneys' fees. Intervenors timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶6        We review a dismissal for failure to state a claim de novo. *Coleman v. City of Mesa*, 230 Ariz. 352, 355, ¶ 7 (2012). Dismissal for failure to state a claim is appropriate if "as a matter of law . . . plaintiffs would not be entitled to relief under any interpretation of the facts susceptible of proof." *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4 (1998). In reviewing the dismissal, we "look only to the pleading itself" and "assume the truth of the well-pled factual allegations" contained within. *Cullen v. Auto–Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7 (2008). "However, we do not accept as true allegations consisting of conclusions of law, inferences or deductions that are not necessarily implied by well-pleaded facts, unreasonable inferences or unsupported conclusions from such facts, or legal conclusions alleged as facts." *Jeter v. Mayo Clinic Ariz.*, 211 Ariz. 386, 389, ¶ 4 (App. 2005).

I.    **Alleged CC&Rs Violations.**

¶7        We consider on appeal whether Intervenors failed to state a claim that the Weinbergs are in violation of the CC&Rs. Covenants and deed restrictions constitute a contract between a subdivision's property owner and individual lot owners. *Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448 (1993). The interpretation of a contract is a matter of law that we review de novo. *Id.*

¶8 Pertinent here, Article III of the CC&Rs provides that "no addition, improvement, or any modification which alters the exterior appearance of the Lot, whether a building, fence, wall, or other structure shall be commenced, erected or maintained on any Lot until the plans . . . have been submitted to and approved in writing by the Architectural Committee, and the Board of Directors." The Board and Architectural Committee ("Committee") have discretion to approve or deny these requests. The Board and Committee can consider "the harmony and conformity of the building with the surrounding area and the effect of such structure or building as seen from adjacent or neighboring properties" and "deny approval of any plans or specifications which are not, in its opinion suitable or desirable for aesthetic or any other reasons."

¶9 The CC&Rs warn that "[a]ny exterior changes, modifications additions or deletions must have the approval of the Architectural Committee and Board of Directors or be subject to removal or change at the Owner's expense." In July 2017, the Board approved a settlement agreement with the Weinbergs. The settlement agreement required the Weinbergs to make changes to their home, pay for cosmetic modifications to the adjoining lot, and consent to various provisions. Upon completion of these requirements, the Weinbergs' lot would be "deemed in compliance" with the CC&Rs.

¶10 Intervenors argue that, despite the settlement agreement, the Weinbergs' home will not comply with the CC&Rs because: (1) the changes were not properly approved; and (2) the Board may not approve home modifications that are expressly prohibited by the CC&Rs.

## A. Approval of the Weinbergs' Home.

¶11 The CC&Rs give the Board final approval of home modifications, providing that "[t]he Architectural Committee shall make its recommendations to the Board of Directors for final approval or disapproval." The Board voted and approved the settlement agreement. Upon compliance with the terms of the settlement agreement, the Weinbergs' lot would be "deemed in compliance" with the CC&Rs. The Weinbergs have complied with the settlement agreement. Therefore, the superior court properly found that the Board approved the Weinbergs' home and deemed it compliant with the CC&Rs.

4

**B.    The Weinbergs' Home Does Not Violate Article II Section 6(A) of the CC&Rs.**

¶12    The Board has "the right and duty" to enforce the restrictions in the CC&Rs and does not have discretion to approve a violation of the CC&Rs.  Thus, the Board's approval would be invalid if the Weinbergs' home violates the CC&Rs.  *See Gfeller v. Scottsdale Vista N. Townhomes Ass'n*, 193 Ariz. 52, 54, ¶ 11 (App. 1998) ("[W]hichever means [of enforcement] it chooses, the Association may not forsake its express duty to enforce the CC & Rs.").  Intervenors allege the Weinbergs' home violates Article II Section 6(A) of the CC&Rs,[1] which states:

> Except in the individual patio areas, no individual planting or gardening shall be done.  No hedges or walls shall be erected or maintained upon said premises, except such as were installed in accordance with the original construction of the buildings.  Any exterior changes, modifications additions or deletions must have the approval of the Architectural Committee and Board of Directors or be subject to removal or change at the Owner's expense.

¶13    This provision restricts individual planting or gardening outside individual patio areas as well as the erection or maintenance of hedges or walls that were not installed in accordance with the original construction of the buildings.  The Weinbergs tore down the original building on their property and reconstructed their new home to be larger than the old structure.  Because the rear perimeter wall of their new home is approximately one foot beyond the rear perimeter wall of the original building, Intervenors argue it is not "in accordance with the original construction" of the building.

¶14    We disagree that Section 6(A) of the CC&Rs provides the categorical prohibition urged by Intervenors.  The "cardinal principle in construing restrictive covenants is that the intention of the parties to the instrument is paramount." *Tezak*, 177 Ariz. at 449.  The intention of the parties is determined by construing the document as a whole. *Newmont*

---

[1]    Appellees assert that this argument was waived.  In Intervenors' Reply in Support of Motion for Entry of Final Judgement, they quoted Section 6(A) and argued the remedial measures previously ordered by the superior court were expressly required by the CC&Rs.  In the exercise of our discretion, *see Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 482 (1986), we do not find this argument waived.

*Expl. Ltd. v. Siskon Corp.*, 125 Ariz. 267, 269 (App. 1980). And "a covenant should not be read in such a way that defeats the plain and obvious meaning of the restriction." *Tezak*, 177 Ariz. at 449. Further, where provisions are conflicting, those "apparently conflicting provisions must be reconciled, if possible by any reasonable interpretation." *Employer's Liab. Assur. Corp. v. Lunt*, 82 Ariz. 320, 327 (1957); *see also Gfeller*, 193 Ariz. at 54, ¶ 13 ("We will, if possible, interpret a contract in such a way as to reconcile and give meaning to all of its terms, if reconciliation can be accomplished by any reasonable interpretation.").

¶15        Article II of the CC&Rs contains various use restrictions. The restrictions fall into two categories. Some restrictions provide that certain activities and actions are prohibited without exception. For example, Section 4 prohibits the display of "clotheslines, equipment, service yards, [and] woodpiles" and does not provide any avenue for attaining an exemption or waiver. Other restrictions provide that certain activities and actions are prohibited unless the Board approves. For instance, Section 8 provides that "[n]o other exterior television, internet, radio antenna or antenna of any sort shall be placed, allowed, or maintained upon any portion of the improvements to be located upon the Properties, nor upon any structure situated upon the real property, without the prior written approval of the Board of Directors."

¶16        Moreover, Article III of the CC&Rs provides broad authority for the Board and Committee to approve any "addition, improvement, or any modification which alters the exterior appearance of the Lot, whether a building, fence, wall, or other structure . . . on any Lot." Construing the entire document, Article III and Section 6(A) of the CC&Rs permit a new "building, fence, wall, or other structure," and "exterior changes, modifications additions or deletions" if they are approved by the Committee and the Board. Because the Board approved the Weinbergs' home, it does not violate Section 6(A).

### C.    Other Alleged CC&Rs Violations.

¶17        The other issues alleged by Intervenors do not implicate express provisions of the CC&Rs. The violations previously found by the superior court were based on a failure to attain proper approval, not express restrictions in the CC&Rs. For example, Intervenors complain the Weinbergs' roof height is 19 feet rather than 17 feet. However, a 17-foot requirement is not included in the CC&Rs. Instead, it is derived from the superior court's 2015 finding that the Board and Committee had preliminarily approved a building height of only 17 feet for the Weinbergs.

Intervenors' argument ignores the superior court's subsequent order that the parties could agree to keep the current height of 19 feet and create an "aesthetic transition" between the Weinbergs' and their neighbors' rooflines. Consistent with that invitation, the settlement agreement addressed issues related to the Weinbergs' and an adjoining lot's rooflines.

**¶18** The CC&Rs also do not expressly prohibit enlarging the footprint of a dwelling. And, although the Board previously found the Weinbergs' home "not aesthetically pleasing" or "consistent with the harmony and conformity of the surrounding area" the Board-approved changes provided in the settlement agreement addressed some of those concerns.

**¶19** Although the CC&Rs give Intervenors the right to enforce the CC&Rs' provisions, it does not give them the ability to substitute their evaluation and approval for that of the Board. As we noted in *Heritage I*, "whether the actions to be taken pursuant to the proposed settlement between Heritage and the Weinbergs would or would not cure any noncompliance with the CC&Rs [was] left to the superior court in the first instance." 246 Ariz. at 573, ¶ 24 n.5. The CC&Rs give the Committee and the Board, not individual homeowners, the authority to approve home modifications. Because the Weinbergs' home has now been approved by the Board, it does not violate any express provisions of the CC&Rs, and the superior court properly granted the Weinbergs' motion to dismiss.

## II. The Superior Court's Attorneys' Fees Award.

**¶20** Generally, we review a determination regarding the amount of fees awarded for an abuse of discretion, *Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 370, ¶ 13 (App. 1998), and will not disturb an award of attorneys' fees if "any reasonable basis exists" to support it, *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430 (App. 1994). However, we review the superior court's authority to grant attorneys' fees de novo. *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 205, ¶ 5 (App. 2014*)*.

### A. Weinbergs' Attorneys' Fees.

**¶21** When a contract provides for attorneys' fees, the contract provision will be enforced according to its terms. *Berry v. 352 E. Virginia, LLC*, 228 Ariz. 9, 13, ¶ 17 (App. 2011). Further, when the contractual provision calls for an award of attorneys' fees to the prevailing party, the award is mandatory. *See Castle v. Barrett-Jackson Auction Co., LLC*, 229 Ariz. 471, 475, ¶ 17 (App. 2012).

¶22          The CC&Rs provide that "any Owner or Owners shall have the standing and right to enforce the provisions of [the CC&Rs] against any other Owner or Owners, and the prevailing party or parties in action to enforce any such provisions shall be entitled to recover from the other party or parties its . . . reasonable attorneys' fees."  Intervenors sued the Weinbergs to enforce provisions of the CC&Rs.  The Weinbergs successfully dismissed Intervenors' claims, becoming the prevailing party.  Therefore, the award to the Weinbergs was mandatory under the terms of the CC&Rs.

### B.          Heritage's Attorneys' Fees.

¶23          Regarding Heritage's fees, the CC&Rs provide that "[i]f the Association takes . . . enforcement action . . . reasonable attorneys' fees, court costs . . . shall also be the personal obligation of the Owner or Owners against whom such action is taken."  The CC&Rs further provide that "in the event suit is filed, the Association as the prevailing party shall be entitled to recover . . . reasonable attorneys' fees . . . related to the enforcement, said amounts being . . . the personal obligation of the Owner or Owners against whom such action is taken."  This provision does not provide for an award of attorneys' fees to Heritage because Intervenors are not "owners against whom such action is taken."  Therefore, the CC&Rs do not mandate an attorneys' fees award to Heritage.

¶24          Nonetheless, A.R.S. § 12-341.01 authorizes such an award.[2] The statute provides that "in any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees."  The statute permits an award to the successful party when the parties are adverse.  Heritage asserted the Weinbergs' home was compliant with the CC&Rs, sought to enforce the settlement agreement, and end the litigation.  Intervenors did not.  *See Pioneer Roofing Co. v. Mardian Const. Co.*, 152 Ariz. 455, 466 (App. 1986) (noting that adverse parties have "opposing positions or interests"); *Fulton Homes Corp. v. BBP Concrete*, 214 Ariz. 566, 571–72, ¶¶ 17–22 (App. 2007) (finding a third-party defendant and a plaintiff adverse for purposes of attorneys' fees awards even though the plaintiff did not assert a claim directly against the third party); *Nationwide Res. Corp. v. Ngai*, 129 Ariz. 226, 232 (App. 1981) (finding parties adverse when their positions were "completely opposite").  Heritage prevailed, and the superior court had discretion to award Heritage fees pursuant to A.R.S. § 12-341.01.  *See McAlister v. Citibank*, 171 Ariz. 207, 216

---

[2]          The superior court awarded fees to both parties under the CC&Rs but noted that the fees it awarded would be the same whether granted under the CC&Rs or § 12-341.01.

(App. 1992) (noting that a court considers "the totality of the circumstances and the relative success of the litigants" in determining who is a successful party).

### C.     Attorneys' Fees Incurred Opposing Intervention.

**¶25**        In *Heritage I*, we determined "that [Intervenors] have met the minimal burden for intervention of right under Rule 24(a)(2)." 246 Ariz. at 573, ¶ 24 n.5. Our prior decision vacated the previous award of attorneys' fees to Heritage and the Weinbergs and "den[ied] the Weinbergs' and Heritage's requests for fees and costs on appeal." *Id.* at ¶ 26. Nothing in that decision prevented the superior court from granting attorneys' fees in the future, except for the denied fees and costs incurred on that appeal. *See Raimey v. Ditsworth*, 227 Ariz. 552, 561, ¶ 26 (App. 2011) (noting that upon remand, a trial court normally has the power to determine attorneys' fees questions and express direction in the mandate is not required for the trial court to award fees); *Nielson v. Patterson*, 204 Ariz. 530, 533, ¶ 12 (2003) ("A vacated judgment lacks force or effect and places parties in the position they occupied before entry of the judgment.").

**¶26**        However, in granting Heritage's and Weinbergs' attorneys' fees, the superior court awarded fees incurred opposing intervention. The superior court has discretion to determine who is a successful party when multiple claims are brought with varied success. *City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 194 (App. 1994). Nonetheless, we have held that "[w]here claims could have been litigated separately, fees should not be awarded for those unsuccessful separate and distinct claims which are unrelated to the claim upon which the [requesting party] prevailed." *Schweiger v. China Doll Rest., Inc.*, 138 Ariz. 183, 189 (App. 1983). Separate and distinct claims include those claims based upon "different facts or legal theories." *Id.*; *see also City of Cottonwood*, 179 Ariz. at 194–95. Generally, "where a party has accomplished the result sought in the litigation, fees should be awarded for time spent even on unsuccessful legal theories," but "[w]here a party has achieved only partial or limited success . . . it would be unreasonable to award compensation for all hours expended, including time spent on the unsuccessful issues or claims." *Schweiger*, 138 Ariz. at 189.

**¶27**        Intervention is a distinct procedural right to become involved in a case. *See* Ariz. R. Civ. P. 24(a)(2). The question of whether a party may intervene is separate from whether the intervenor will succeed on the merits of the case. Here, the motion to intervene was separate and distinct from the merits of the underlying action. Because Heritage and the

Weinbergs were unsuccessful in opposing intervention, the superior court abused its discretion in granting fees for work done opposing the motion to intervene. *See Mills by Mills v. Freeman*, 118 F.3d 727, 733 (11th Cir. 1997) (affirming the denial of fees incurred in unsuccessful opposition to intervention because the "intervention claim was distinct from appellant's success" on the underlying substantive claims); *see also Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 176–77 (4th Cir. 1993) (affirming exclusion of intervention-related fees and expenses under 42 U.S.C. § 1988 to a party who unsuccessfully opposed intervention but later succeeded on the merits); *cf. also Summers Grp., Inc. v. Tempe Mech., LLC*, 231 Ariz. 571, 574, ¶ 15 (App. 2013) (noting that "in multi-issue litigation, it is common for attorney fees to be apportioned between successful and unsuccessful efforts").

**¶28** For these reasons, we vacate the superior court's award of attorneys' fees.[3]

## III. Attorneys' Fees on Appeal.

**¶29** Intervenors, Heritage, and the Weinbergs request an award of their attorneys' fees incurred on this appeal. In our discretion, we deny both Heritage's and Intervenors' requests for fees under A.R.S. § 12-341.01. Under the CC&Rs, as the substantially prevailing party, an award of attorney fees to the Weinbergs is mandatory. *Supra* ¶ 23; *see also Castle*, 229 Ariz. at 475, ¶ 17 (noting "we have no discretion to deny an award mandated by the parties' contract"). Accordingly, we award the Weinbergs their reasonable fees upon timely compliance with ARCAP 21.

---

[3] The record indicates that, although the superior court denied fees the Weinbergs incurred on the prior appeal, it may have granted fees Heritage incurred on appeal in *Heritage I*. On remand, the superior court should not award attorneys' fees incurred in opposing intervention at the superior court or on appeal.

## CONCLUSION

¶30 For the foregoing reasons, we affirm the superior court's decision granting the Weinbergs' motion to dismiss. The awards of attorneys' fees to Heritage and the Weinbergs are vacated and that matter is remanded to the superior court for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA